Argued July 13, 1978, affirmed February 27, 1979

COLLIS, *Respondent,*
*v.*
BAKER et ux, *Appellants.*
(TC A 7601 01240, SC 25358)
591 P2d 363

Marvin S. Nepom, Portland, argued the cause for appellants. With him on the brief were Ray F. Merry, King & Merry.

Glen P. McClendon, of Lindsay, Nahstoll, Hart, Neil & Weigler, Portland, argued the cause and filed a brief for respondent.

[417]

Before Holman, Presiding Justice, and Howell, Lent and Linde, Justices.

LINDE, J.

**LINDE, J.**

Defendant lessors appeal from a judgment awarding plaintiff damages resulting from defendants' failure to consent to the assignment of plaintiff's lease to a third party.

Plaintiff leased the Freeway Hotel in Portland, Oregon, from defendants Mr. and Mrs. Baker in 1972. In November, 1975, plaintiff assigned his interest in the lease to Albert Chenoweth for $30,000, subject to the Bakers' consent. This was required by the following provision of the lease:

> 6. The lessee will not assign, transfer, pledge, hypothecate, surrender or dispose of this lease, or any interest herein, or permit any other person or persons whomsoever to occupy the demised premises without the written consent of Lessor being first obtained in writing, it being agreed however, that such consent will not be unreasonably withheld; . . .

Plaintiff sought defendants' consent to the assignment during November and December, 1975, but the negotiations did not result in an agreement on conditions demanded by Mr. Baker.[1] Meanwhile, plaintiff had put Chenoweth in possession of the hotel as of December 1, 1975, and thereafter plaintiff and Chenoweth treated the transfer as completed despite Mr. Baker's refusal to consent. Defendant made it clear that he did not recognize Chenoweth as transferee of the lease. In February, 1976, plaintiff sued for a declaration that defendants' refusal to consent was unreasonable; in answer, defendants asked that plaintiff's rights under the lease be terminated for breaching the assignment clause without defendant's consent.

While this action was pending, in August, 1976, the hotel's elevator became inoperable, requiring repairs

---

[1] When we refer to "defendant" in the singular, we mean Mr. Baker. According to plaintiff's uncontradicted testimony, Mrs. Baker was not involved in these negotiations and there was no separate demand for and refusal of her consent. Defendants have not chosen to press this issue on appeal; therefore we refer only to Mr. Baker's role in the transactions.

that were estimated to cost $4,500. Under the lease, the lessor was not obligated to undertake repairs but to pay the cost of repairs to the elevator above $100.[2] Despite various communications between the several parties, none of them ordered the elevator repairs. On September 1, 1976, Chenoweth wrote plaintiff that he had decided to terminate the agreement between them because Baker had not consented to the assignment and because he had not paid for the repairs. At the time of the termination, $25,397.36 remained payable on Chenoweth's contract with plaintiff.

On September 3, plaintiff notified Mr. Baker of plaintiff's decision to terminate the lease on the grounds of Baker's failure to recognize the assignment to Chenoweth or to repair the elevator. He thereafter filed a "Supplemental Complaint" in the pending action in two counts: one for $25,397.36 in damages for loss of the benefits of plaintiff's bargain with Chenoweth, the second for damages for breach of the lease in failing to repair the elevator. The case was tried to the court without a jury. At the conclusion of plaintiff's case, the court granted defendant's motion for involuntary nonsuit on the second count on the grounds that plaintiff could have ordered the repairs at defendant's expense and that the damages were speculative. At the end of the trial, the court found that defendant's refusal to consent to the assignment of the lease to Chenoweth was unreasonable, and that this refusal lost plaintiff the benefits of that assignment in the amount of the unpaid portion of the price.

Defendant appeals only from the judgment for damages. The only claim on appeal is that the evidence does not support a finding that the refusal to consent to the assignment caused plaintiff's loss. Defendant maintains that Chenoweth terminated his agreement

---

[2]    4a. The Lessor shall not be required to make any repairs, alterations, additions or improvements to or upon said premises during the term of this lease, except for those hereinafter specifically provided for. . . Lessor shall pay for repairs to the elevator and heating system in excess of the cost of $100.00, . . .

with plaintiff not because of the unresolved disagreement over the assignment of the lease but because the elevator was not repaired—a failure for which defendant was not responsible, as the trial court had found in granting the nonsuit on the first count.

We think the trial court had enough evidence to find that defendant's refusal to recognize Chenoweth as a tenant by assignment, which the court held to be unreasonable, was one reason for Chenoweth's decision to end his effort to buy plaintiff's hotel business. Mr. Chenoweth testified on direct examination that he had talked to Mr. Baker about the breakdown of the elevator, and that Baker has said that "[t]here was just nothing he could do about it." Chenoweth's impression of the conversation was that "it had something to do with not recognizing me." On cross-examination defense counsel described Chenoweth's letter of termination as "more or less of a two-fold letter" or one including "two prongs . .. one Mr. Baker had not consented to the assignment of the lease to you; two, and was—well, not paying the repairs?" He then asked Chenoweth:

Q . . . Well, your major concern in September of 1976 was because the elevator shut down; wasn't it?
A Yes, sir.
Q Up to the time the elevator had problems, had developed in August, you had been operating the hotel; right?
A Yes, sir.
Q And you had got some rugs and did some painting and you were anticipating operating the hotel; weren't you?
A Yes.
Q Okay. So had the problem with the elevator not developed you would have continued operating the hotel until a judicial determination was made about the assignment, wouldn't you?
A Yes, I would have.
Q In fact the letter I was referring to there where it uses two prongs, in fact your main concern was the

[421]

elevator problem and that is what caused you to terminate the lease; isn't that true?

A  Yes, sir.

According to defendant, Chenoweth's testimony proves that except for the elevator repair, which plaintiff could have ordered at defendants' expense beyond the first $100, Chenoweth would not have left merely because of the unresolved issue of the assignment itself, so that plaintiff has not shown causation. We do not think the issue can be divided in that fashion. Chenoweth mentioned both the refusal to recognize him as a tenant and the failure to repair the elevator in his letter of termination to plaintiff. There is evidence that both he and plaintiff knew of the lease provision obligating defendant to pay for most of the repair, but, as Judge Davis said, in view of the unresolved controversy over the assignment neither felt safe in ordering the repairs in case defendants might be obligated only to the other. Defendant might have indicated that he would bear the cost of the repairs however the assignment issue was resolved, but instead Mr. Baker told Chenoweth that there was nothing Baker could do about it. The trial court could find that defendant's original refusal to consent to the assignment, in violation of the lease, created the uncertainty that led Chenoweth to terminate his agreement with plaintiff, as Chenoweth stated in his letter. Whether Chenoweth was justified in terminating it is not the question before us, but there is evidence to support the trial court's conclusion that defendant's conduct caused him to do so.

Affirmed.