653 P.2d 806

Richard E. FAHRENWALD and M. Eleanor Fahrenwald, Plaintiffs-Respondents,

v.

Lloyd L. LaBONTE, Defendant-Appellant,

and

Errol D. "Bud" Beach, Defendant.

No. 13829.

Court of Appeals of Idaho.

Oct. 28, 1982.

Allen V. Bowles, Bowles & Barker, Moscow, for defendant-appellant.

William W. Thompson, Jr., Rines & Thompson, Moscow, for plaintiffs-respondents.

BURNETT, Judge.

This case focuses upon a sublease of commercial real property. We are asked to decide whether the sublessee is entitled to recover damages resulting from the sublessor's allegedly unreasonable withholding of consent to an assignment of the sublease to another tenant. The district judge denied recovery because he was not persuaded that the sublessor had acted unreasonably. We affirm.

I

From a rather convoluted record, we have distilled the following facts essential to our opinion. In 1977 Lloyd LaBonte and Errol Beach acquired the "going concern" value of an automobile dealership and gave a promissory note to Richard Fahrenwald, the former dealer. LaBonte and Beach formed a business corporation, University Motors, Inc., to operate the dealership. The business was located upon real property in Moscow, Idaho, which Fahrenwald had been leasing from an out-of-state owner. As part of the transaction with LaBonte and

Beach, Fahrenwald subleased the premises to University Motors, Inc., charging the same monthly rent that he was paying the owner. LaBonte and Beach individually guarantied the corporation's performance of the sublease. The sublease instrument authorized the corporation to assign its interest in the leasehold, or to sublet the premises further, if consent were obtained from Fahrenwald and from the owner. The instrument provided that Fahrenwald would not withhold his consent unreasonably.

After operating the dealership for nearly a year, the corporation encountered hard times. Rental payments by the corporation, and payments on the promissory note by LaBonte and Beach, fell into arrears. In September, 1978, LaBonte informed Fahrenwald that the corporation was closing the dealership and looking for another tenant to occupy the premises. Fahrenwald and LaBonte discussed sublease terms that might be offered to possible purchasers of the corporation's business. However, no purchaser was found.

In October the dealership ceased operation and the corporation began to liquidate its assets. On October 19, Fahrenwald filed the instant action to collect the entire balance of the note from LaBonte and Beach, and to restrain the corporation from wasting any assets or removing any fixtures from the premises. On October 24, LaBonte obtained a written offer from a party identified as "Richard Beebe, d/b/a Fashion Floors, Inc.," to take an assignment of the sublease from University Motors, Inc., for a portion of the remaining term of the sublease.[1] The offer provided for Beebe to pay University Motors, Inc., during the assignment period, a premium of $800 per month in addition to the rent owed

by the corporation to Fahrenwald under the sublease. The offer recited that it was contingent upon procuring the consents of Fahrenwald and of the property owner by November 1. The offer was communicated to Fahrenwald's attorney on October 24. According to Fahrenwald's subsequent testimony, his attorney requested financial information about Beebe and Fashion Floors, Inc.

At a meeting on October 26, Fahrenwald received a copy of Beebe's offer, together with an unaudited financial statement for "Fashion Floors, Inc.," and a payment of amounts then in arrears on the note and sublease. He received no financial data on Beebe personally. Fahrenwald declined to give his consent to the proposed assignment on October 26. He said he preferred that any premium payments be made to him, rather than to University Motors, Inc. The possibility of redirecting part of the premium payments to Fahrenwald, in order to obtain his consent to the proposed assignment, was discussed without result.

Events following the October 26 meeting are shrouded in conflicting evidence and speculation. On October 27, the attorney representing Fahrenwald filed in federal court—on behalf of other creditors of University Motors, Inc.—a petition for an involuntary adjudication that University Motors, Inc., was bankrupt. It was subsequently argued, in the instant litigation, that although Fahrenwald was not a party to the petition, he and the attorney had orchestrated the filing of the petition in order to regain possession of the premises under the terms of the sublease, and to cast doubt upon the legal capacity of University Motors, Inc., to assign its rights under the sublease.[2] However, the record also indi-

---

1. Although the point has not been urged by these parties on appeal, it should be noted that an assignment, unlike a sublease, disposes of a lessee's entire interest in the leasehold, and does not reserve to the lessee any reversionary interest. *Groth v. Continental Oil Co.*, 84 Idaho 409, 373 P.2d 548 (1962).

2. The sublease provided that the filing of "a petition in bankruptcy ... by or against [the

subleasing tenant]" would constitute a "default" by the tenant, giving rise to remedies including dispossession from the premises and termination of the lease. The parties on appeal have not raised the question—and therefore we need not decide—whether this clause was affected by enactment of the Bankruptcy Reform Act of 1978, which provides in part that such clauses in leases or other contracts are unenforceable as against the power of a trustee to

cates that the petition was filed just prior to a scheduled auction of corporate assets. The trial court made no determination concerning the motive for filing the involuntary petition. In any event, on October 30, Beebe concluded that an assignment might involve him in a legal dispute, so he withdrew his offer. Fahrenwald later regained possession of the property.

The involuntary bankruptcy petition ultimately was granted by the federal court, and a trustee was appointed for University Motors, Inc. In February, 1980, the trustee entered into a compromise of various claims in bankruptcy. The compromise agreement provided in part that any claim which University Motors, Inc., might have against Fahrenwald under the sublease was transferred to LaBonte individually. LaBonte thereafter filed a counterclaim against Fahrenwald in the present action. LaBonte alleged that Fahrenwald unreasonably had refused to consent to the proposed assignment of the corporation's sublease, while Beebe's offer was outstanding. The counterclaim sought damages in the amount of premium payments which the corporation could have received from Beebe. The trial court denied recovery on the counterclaim. Judgment was entered against LaBonte and Beach for the balance of the promissory note. LaBonte has appealed the adverse decision on his counterclaim.

## II

Our research does not disclose a previously reported Idaho case dealing with an express provision, in a lease or sublease, prohibiting the unreasonable withholding of consent to an assignment or to a further sublease. *Compare Funk v. Funk,* 102 Idaho 521, 633 P.2d 586 (1981) (imputing a reasonableness requirement, as a matter of law, to leases which simply prohibit assignment or subleasing without consent). Consequently, the instant case appears to be one of first impression.

use or to dispose of the subject property. *See* 11 U.S.C. § 363(*l*).

**3.** We do not intimate, by our holding today, that a *non*-express prohibition against unreasonable withholding of consent—such as the

Traditionally, the starting point for analyzing this type of case has been to determine whether the express prohibition against unreasonable withholding of consent should be viewed narrowly as a mere qualification of a covenant by the *tenant* not to assign or to sublet without consent, or more broadly as a covenant by the *lessor* to exercise his power of consent reasonably. *See* Annot., 54 A.L.R.3d 679 (1973). Courts adopting the narrow view have restricted a tenant's remedies, where a lessor unreasonably withholds consent, to obtaining a judicial determination that an assignment or sublease made without consent is valid. *E.g., Mann v. Steinberg,* 188 Misc. 652, 64 N.Y.S.2d 68 (N.Y.Sup.Ct.1946). However, where—as here—a tenant seeks damages because the withholding of consent allegedly has frustrated an assignment or sublease, the question becomes whether the prohibition against unreasonable withholding of consent should be viewed more broadly, as the lessor's covenant. *See Collis v. Baker,* 285 Or. 417, 591 P.2d 363 (1979). Most courts have answered this question in the affirmative. By the clear weight of authority, an express provision of a lease, prohibiting the unreasonable withholding of consent, has been held to represent a lessor's covenant, enforceable in damages by the tenant. *E.g., Chanslor-Western Oil & Development Co. v. Metropolitan Sanitary Dist.,* 131 Ill.App.2d 527, 266 N.E.2d 405 (1970); *Broad & Bradford Place Corp. v. J.J. Hockenjos Co.,* 132 NJL 229, 39 A.2d 80 (1944); RESTATEMENT (SECOND) OF PROPERTY, § 15.2, comment h (1977); Annot., *supra,* at 684–85. We adopt this broader view, and hold that the prohibition against unreasonable withholding of consent, in the sublease between Fahrenwald and University Motors, Inc., represented a covenant by Fahrenwald, enforceable in damages.[3]

reasonableness requirement imputed to a lease in *Funk v. Funk, supra* —should be viewed as a mere qualification of a tenant's covenant, giving rise only to the remedies afforded by the "narrow view" described above. We are not necessarily persuaded that such a restriction of

The next question is whether the trial court correctly determined that Fahrenwald had not breached his covenant. We examine this question from two perspectives. First, we review the court's findings to determine whether they are sustained by the record. Secondly, we weigh the sufficiency of those findings against the legal standard for determining the reasonableness of a lessor's failure to consent to an assignment or sublease.

Our record does not contain a memorandum decision by the trial court. Consequently, we must take our bearings from the final "Findings of Fact and Conclusions of Law" signed by the judge. This document does not entirely segregate the factual findings from the legal conclusions. On the question of Fahrenwald's failure to consent to the proposed assignment, the "findings of fact" state only that on October 26, when Beebe's offer was presented, Fahrenwald was interested in receiving part of the premium payments, and that he was "sincerely unclear" as to whether the assignment would cancel the guaranties of performance on the sublease, which had been given by LaBonte and Beach. The court elaborated upon this finding in its "conclusions of law," where it stated that Fahrenwald had not been afforded adequate time—from October 26 until Beebe withdrew his offer on October 30—"to properly analyze such a complex situation," to determine the position of the property owner concerning the proposed assignment, and to evaluate Beebe's "financial strength." The court further "concluded" that the proposed assignment failed to compensate Fahrenwald for expenses in "dealing with" the assignment, and that the assignment was ambiguous with respect to Beebe's liability if he had surrendered the premises before expiration of the period covered by the assignment.

▮ Our task on appeal is to ascertain whether the evidence supports the findings of fact, and whether those findings support the conclusions of law. *Morris v. Frandsen,* 101 Idaho 778, 621 P.2d 394 (1980). This task is made difficult when the findings and conclusions are somewhat mixed. Ordinarily, when the findings on material issues are inadequate to support the conclusions, the trial court's decision must be reversed. *E.g., Perry Plumbing Co. v. Schuler,* 96 Idaho 494, 531 P.2d 584 (1975). However, reversal is not warranted if the record is sufficiently clear to give the appellate court a complete understanding of the material issues. *E.g., Perry Plumbing Co. v. Schuler, supra; Sundowner, Inc. v. King,* 95 Idaho 367, 509 P.2d 785 (1973). In this case, the "findings of fact," labeled as such, do not address all of the facts pertinent to the issue of reasonableness. However, when those findings are considered together with the factual matters included in the "conclusions of law," we can derive a full understanding of the trial court's determinations of fact concerning Fahrenwald's failure to consent to the proposed assignment.

On appeal, LaBonte takes vigorous exception to the trial court's factual determinations and conclusions. He urges that Fahrenwald's desire to participate in premium payments was the only genuine reason for withholding consent. He contends that the continuing force of the guaranties and the extent of Beebe's obligations were set forth in the guaranty and assignment instruments. LaBonte further argues that, although information about Beebe's personal financial condition was not furnished, Fahrenwald did not require compliance with his attorney's request for such information. In any event, LaBonte contends, Fahrenwald was protected by the guaranties; and Beebe's financial condition, at worst, could not have posed a greater risk to Fahrenwald than the actual closing of the dealership and liquidation of the existing tenant, University Motors, Inc. LaBonte maintains that the property owner's position concerning assignment, and the lack of provision for payment of Fahrenwald's expenses, were not important to Fahrenwald's failure to give consent. LaBonte points to numer-

---

remedies is sound in any context. However, that issue is not before us, and it was not addressed in *Funk.* It awaits determination on another day, in an appropriate case.

ous passages in Fahrenwald's trial testimony, where Fahrenwald explained that he had withheld consent because he felt the proposed assignment posed certain risks to him, for which he desired to be compensated by receiving part of the rental premiums. Finally, LaBonte urges that the four-day time span, from presentation of Beebe's offer on October 26 to withdrawal of the offer on October 30, was not a genuine factor in Fahrenwald's decision, because Fahrenwald evidently had decided on October 27 not to consent to the proposed assignment when he helped arrange the filing of the involuntary bankruptcy petition.

■ In our view, LaBonte's challenges to the trial court's findings turn on two basic propositions: (1) that the proposed assignment did not, in fact, pose a risk for which Fahrenwald was entitled to seek compensation; and (2) that Fahrenwald cynically induced Beebe to withdraw his offer, by encouraging the bankruptcy petition to be filed. The first proposition focuses upon the actual risk, or lack of risk, posed by the assignment. It does not contradict the trial court's finding that Fahrenwald perceived a risk. The second proposition suggests a view of Fahrenwald's behavior—based partly upon supposition—which the district court simply declined to adopt. The burden of proving that Fahrenwald had acted unreasonably was upon LaBonte. *E.g., Haack v. Great Atlantic & Pacific Tea Co.,* 603 S.W.2d 645 (Mo.App.1980). That the evidence might have supported a view different from the one adopted by the trial court does not signify that LaBonte satisfied his burden of persuasion.

■ The question on appeal is whether the trial court's view was supported by the record. From our examination of the record, we believe the findings that Fahrenwald was "sincerely unclear" about the potential consequences of the proposed assignment, and that four days did not provide adequate time to obtain all information necessary to resolve Fahrenwald's concerns, are supported by substantial and competent, though conflicting, evidence. We will not substitute our impressions, from a written record, for the determinations made by a trial judge who saw and heard the witnesses testify. The judge's findings are not clearly erroneous, and they will not be disturbed on appeal. I.R.C.P. 52(a); *Lawyers Title Co. of Idaho v. Jacobs,* 102 Idaho 804, 641 P.2d 350 (Ct.App.1982).

■ We turn now to consideration of whether these findings are sufficient to support the trial court's conclusion of law, that Fahrenwald did not act unreasonably in failing to consent to the proposed assignment. Our Supreme Court has stated that the standard used to review a lessor's refusal to consent to a proposed sublease is "one of a reasonable person in the position of a landlord owning and leasing commercial property." *Funk v. Funk,* 102 Idaho at 524–25, 633 P.2d at 589–90. This standard may also be employed to review a lessor's refusal to consent to a proposed assignment. *See* cases cited in Annot., *supra,* at 689.

■ In this case, as we have noted, Fahrenwald perceived a risk for which he sought compensation. Whether he acted as a "reasonable person" turns upon the reasonableness of his perception of risk. According to his testimony, Fahrenwald feared that the guaranties of LaBonte and Beach might only secure performance of the sublease by University Motors, Inc., and would not extend to performance by an assignee such as Beebe. Fahrenwald also was apprehensive that language in the proposed assignment, to the effect that University Motors, Inc., could take back the sublease if Beebe surrendered the premises, might be interpreted to limit Beebe's obligation fully to perform under the sublease. Finally, from October 26 through October 30, Fahrenwald received no financial data about Beebe; and he had only an unaudited financial statement about Beebe's business, Fashion Floors, Inc.

Our review of the guaranty instruments indicates that the perceived risk of cancellation may have been legally remote. However, we agree with the trial court that a "reasonable person" would not have been wholly free of apprehension about the extent of Beebe's obligations.

With respect to the lack of financial data, it is well settled that a lessor is entitled to weigh the financial responsibility of a proposed subtenant or assignee, in deciding whether to consent to a sublease or assignment. *See, e.g., Robinson v. Weitz,* 171 Conn. 545, 370 A.2d 1066 (1977); *Funk v. Funk, supra; Jones v. Andy Griffith Products, Inc.,* 35 N.C.App. 170, 241 S.E. 2d 140 (1978), *cert. denied,* 295 N.C. 90, 244 S.E.2d 258 (1979); Annot., *supra,* at 689–91. We are not persuaded, by argument on appeal, that Fahrenwald's right to insist upon a financially responsible tenant was obviated by the demise of University Motors, Inc. A lessor or sublessor of distressed commercial property is not constrained to accept a new tenant of unknown means, merely because the prior tenant was a failure. We are unable to say, as a matter of law, that Fahrenwald, who had been given incomplete financial information and only a few days to make a decision, acted unreasonably by failing to give his consent before Beebe withdrew his offer.

We have reviewed cases cited by LaBonte, in support of his contention of unreasonableness. We deem them to be distinguishable. In *Ringwood Associates, Ltd. v. Jack's of Route 23, Inc.,* 166 N.J.Super. 36, 398 A.2d 1315 (1979), the appellate court sustained a determination that a landlord had breached the lease by unreasonably withholding consent to a proposed assignment. The court was influenced by the original tenant's expressed willingness specifically to guarantee the proposed assignee's performance, by failure of the landlord corporation to request information on the financial condition of the proposed assignee, and by an unequivocal representation to the lessee that the landlord would not consent to an assignment. In the present case, however, Fahrenwald's attorney sought detailed information about the financial condition of Beebe and his business; Fahrenwald was uncertain as to whether the guaranties by LaBonte and Beach would extend to Beebe's performance; and no unequivocal rejection of the proposed assignment occurred.

In *Catalina, Inc. v. Biscayne N.E. Corp. of Florida,* 296 So.2d 580 (Fla.App.1974), the court held that a lessor's refusal to consent to a proposed sublease was unreasonable because the lessor's sole reason for withholding consent was that the original lessee, and not the lessor, would have made a profit on the sublease. In the instant case, Fahrenwald's alleged profit motive was an issue, but the trial court found that profit was not the sole reason why Fahrenwald failed to give consent.

Finally, in *Adams, Harkness & Hill, Inc. v. Northeast Realty Co.,* 281 N.E.2d 262 (Mass.1972), the court affirmed a determination that a lessor acted unreasonably in refusing to accept a proposed subtenant, despite a specific offer by the original tenant to guarantee the subtenant's payment of rent for the entire term of the lease. In that case the guarantor-tenant had performed satisfactorily under the lease, and information showing the proposed subtenant (a stockbroker) to be financially responsible had been submitted to the lessor. In the present case, as previously noted, Fahrenwald was uncertain about the continued effect of the LaBonte and Beach guaranties. Moreover, he had already sued these guarantors for an earlier default on the promissory note relating to purchase of the dealership. Finally, he was not furnished complete data on the proposed assignee's financial responsibility.

We have found no reported decision in which a lessor was held to act unreasonably by withholding consent to a proposed assignment, in a fact pattern matching the present case. We conclude that the authorities cited by LaBonte, and disclosed by our research, are consistent with the judgment of the trial court in this case.[4]

---

4. Our disposition of the issue concerning the withholding of consent makes it unnecessary to address a separate determination by the trial court, that LaBonte's counterclaim had been waived when the trustee for University Motors, Inc., tendered rental payments to Fahrenwald for temporary use of the premises after University Motors, Inc., was adjudicated bankrupt.

## III

Fahrenwald seeks an award of attorney fees on appeal, pursuant to the terms of his sublease with University Motors, Inc. The sublease instrument provided that the "prevailing party" would be "entitled" to an award of reasonable attorney fees, in any action brought to "enforce" the terms of the lease. We have held that the prohibition in the sublease instrument, against unreasonable withholding of consent to assignment or to a further sublease, represented a covenant by the lessor, Fahrenwald. LaBonte's counterclaim was brought, and this appeal was prosecuted, to enforce that covenant. But Fahrenwald has prevailed.

Accordingly, we hold that Fahrenwald is entitled to reasonable attorney fees in this appeal, as provided in the sublease. *See Vaughn v. Vaughn,* 91 Idaho 544, 428 P.2d 50 (1967); *Industrial Investment Corp. v. Rocca,* 102 Idaho 920, 643 P.2d 1090 (Ct. App.1982). The amount of fees on appeal shall be determined in accordance with I.A.R. 41(d).

The judgment of the district court is affirmed. Costs and attorney fees to respondents Fahrenwald.

WALTERS, C.J., and SWANSTROM, J., concur.