715 P.2d 1000

**STEWART TITLE OF IDAHO, INC.,**
Plaintiff-Appellant,

v.

**NAMPA LAND TITLE COMPANY, INC.,**
**an Idaho corporation, and Rod Astle-**
**ford, individually, Defendants-Respon-**
**dents.**

No. 15635.

Supreme Court of Idaho.

March 6, 1986.

---

Howard I. Manweiler, of Manweiler, Bevis & Cameron, Boise, for plaintiff-appellant.

Cumer L. Green, and Bradford Scott Eidam, of Green Law Offices, Boise, for defendants-respondents.

DONALDSON, Chief Justice.

This appeal arises out of the sale of real property which was subject to an outstanding lease and option to purchase at the time it was sold. Kenneth and Sandra Gentry were interested in purchasing 40 acres of real property from Iola Doramus. The Gentrys approached Lomas & Nettleton, a lending institution, in February of 1976 to obtain financing for the purchase. Lomas & Nettleton tentatively agreed to loan the Gentrys the $40,000.00 purchase price in exchange for a mortgage on the property and requested a preliminary title search from respondent, Nampa Land Title Company. Lomas & Nettleton hired appellant's predecessor in interest, Ada County Escrow, as the closing agent for the transaction.

A preliminary title report was prepared by Rod Astleford, an employee of Nampa Land Title, on March 11, 1976, and was sent to Lomas & Nettleton. Lomas & Nettleton forwarded the report to Darlene Anderson, an employee of Ada County Escrow. The report listed nine exceptions subject to which Nampa Land Title was willing to insure title to the property. The escrow closing instructions directed that the escrow agent not disburse any funds until all the exceptions other than 3, 4, and 8 had been cleared from the title.

Exceptions 5 and 6—the only exceptions relevant to this appeal—indicated that the property was subject to an outstanding farm lease and an option to purchase. The record reveals that in August of 1974, Doramus had granted a three-year lease and an option to purchase to Gerald and Doris Trunnell.

Darlene Anderson contacted Rod Astleford by telephone regarding exceptions 5 and 6. She testified that Astleford represented to her that exceptions 5 and 6 would be deleted upon recordation of a warranty deed from Doramus to the Gentrys. Astleford, however, testified that he told Anderson that she would need to obtain a release of the lienholder's rights or a conveyance from the Trunnells back to Doramus in order to clear exceptions 5 and 6. In any event, nothing was done to remove the exceptions.

Anderson testified that she made a second telephone call to Astleford on March 29, prior to closing the transaction. She stated that Astleford told her during that conversation that the "title was clear." Astleford denies making any such statement. Immediately thereafter, Anderson closed the transaction and disbursed the loan funds from escrow. Exceptions 5 and 6 were not removed from the policy.

The filing of lawsuits then began: the Trunnells sued to have their lease-option agreement declared valid and superior to the interests of any other party; Lomas & Nettleton sued Ada County Escrow and Nampa Land Title to recover the loan proceeds resulting in a $67,000 judgment against Ada County Escrow; and in the action which is the subject of this appeal, Ada County Escrow, now Stewart Title, sued Nampa Land Title alleging that Rod Astleford made misrepresentations to Darlene Anderson which she relied upon to her detriment and to the detriment of Ada County Escrow.

Trial in the instant action was held before the district court, sitting without a jury, on March 26, 1984. The court found that Rod Astleford did not make any fraudulent or intentional misrepresentations to Darlene Anderson. The court determined that Anderson was a trained and experienced escrow closing agent, and concluded that even if her version of the conversation between herself and Astleford was correct,

"A reasonable and prudent closing officer in the Boise area in 1976 would not have relied solely and exclusively upon the representations of Rod Astleford, such as Darlene Anderson remembers them to be, in closing this transaction and in disbursing funds, but would have instead inquired and investigated further as to what was necessary to eliminate exceptions 5 and 6 from the final title policy, and would have taken further action to insure that exceptions 5 and 6 were cleared prior to closing the transaction and distributing funds."

Accordingly, the court entered judgment in favor of Astleford and Nampa Land Title.

Stewart Title has appealed from that judgment.

Stewart Title presents two arguments on appeal: (1) that the trial court erred in concluding that a reasonable and prudent closing officer would not have relied on Astleford's alleged misrepresentations; and (2) that the court's failure to make specific findings on the theory of negligent misrepresentation constitutes reversible error. We will discuss each argument in the order presented.

I

An essential element of the torts both of fraudulent and negligent misrepresentation is that the recipient's reliance on the misrepresentation must be justified. Restatement (Second) of Torts §§ 537 and 552 (1977). In the instant case, the trial court concluded, as a matter of law, that Anderson's reliance on Astleford's alleged misrepresentations was not justified. The court determined that a reasonable and prudent closing officer in the Boise area would not have relied upon such representations, but would have investigated further and taken further action to insure that the exceptions were, in fact, cleared prior to closing. Appellant argues that the trial court's conclusions are not supported by the evidence.

Our task on appeal is to ascertain whether the evidence supports the trial court's findings of fact and whether those findings in turn support the conclusions of law. *Fahrenwald v. LaBonte*, 103 Idaho 751, 755, 653 P.2d 806, 810 (Ct.App.1982). After reviewing the record, we conclude that the evidence, although conflicting, is sufficient to support the trial court's conclusions.

Stewart Title's case at trial consisted primarily of Anderson's testimony. That testimony established that Anderson was an experienced closing agent in 1976 when the instant transaction was closed. Anderson admitted that it is always the responsibility of the escrow closing agent to insure that all the objectionable excep-

tions are cleared from the title prior to closing.

Nampa Land Title offered the testimony of two witnesses as to the local procedure for closing real estate transactions in 1976. Dan Vestal, a former manager at Nampa Land Title, with 17 years experience in title work in the Boise area, testified that it was a very unusual practice in 1976 for an escrow company to rely on oral communications from title officers in disbursing funds. Richard Mollerup, who was a loan officer at Lomas & Nettleton in 1976, and the manager of Lawyer's Title of Idaho in Boise at the time of trial, testified that a reasonably prudent escrow agent would not have closed the Doramus-Gentry transaction based on Astleford's alleged misrepresentations. Mollerup explained it simply would not be logical to assume that a deed from one party to another could remove the interest of a third party. Aside from Anderson's own testimony, Stewart Title did not offer any testimony in rebuttal.

The above testimony, taken as a whole, was sufficient to support the trial court's conclusion that Anderson was not justified in relying on the alleged misrepresentations. Because the trial court's findings and conclusions are supported by the evidence, they will not be disturbed on appeal.

## II

Stewart Title argues that the trial court's failure to make findings on the theory of negligent misrepresentation constitutes reversible error. The tort of negligent misrepresentation is a newly emerging tort which has yet to be recognized in the courts of this state. It is defined in the Restatement as follows:

"**§ 552. Information Negligently Supplied for the Guidance of Others**

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their *justifiable reliance* upon the infor-

mation, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Restatement (Second) of Torts § 552. (Emphasis added).

While we express no opinion as to the viability of a cause of action for negligent misrepresentation in this state, we do note that even if we were to recognize the tort, Stewart Title is barred from recovery on that theory. The trial court concluded that Anderson's reliance on the alleged misrepresentations were not justified and, as we have noted above, that conclusion was supported by the evidence. Since justifiable reliance is an essential element of the tort of negligent representation and since the trial court concluded that Anderson's reliance was not justified, recovery for negligent misrepresentation was precluded. Therefore, the court's failure to make findings on that theory was not error.

The decision of the district court is affirmed.

Costs to respondents.

No attorney fees on appeal.

SHEPARD and HUNTLEY, JJ., concur.

BAKES, J., concurs in Part I and concurs in the result of Part II.

BISTLINE, Justice, dissenting.

I must respectfully dissent from the decision of the majority. In the real world, closing officers and others dealing in real estate do transact business over the telephone. Proof of this reality may be found in *Hoffman v. Sun Valley Co., Inc.*, 102 Idaho 187, 189, 628 P.2d 218, 220 (1981), wherein this Court held that telephone negotiations over the sale of a lot constituted an oral contract, though that contract ultimately proved unenforceable for failure to comply with the statute of frauds. No unreasoned reliance undermined the agreement in *Hoffman;* none should have been found here. Anderson had dealt with Astleford before and found him reliable; she

was entitled to rely on him in the instant transaction as well.

Contrary to the majority's claim, the record does not support the district court's finding of fact that a reasonable and prudent closing officer in the Boise area would not have relied upon a title officer's oral representations regarding exceptions to a title. For one thing, the two witnesses to whom the district court and the majority deferred testified only to industry standards in *Canyon County*, not in the Boise area. For another, both witnesses equivocated and expressed the opinion that Anderson was justified in relying on the word of title officer Astleford.

The district court never resolved the conflict between the testimony of Anderson and Astleford. Such would have been essential to determine whether Astleford had misrepresented the status of the title here concerned. The erroneous holding of today's majority permits the answer to the essential question in this lawsuit to remain forever unspoken.