518

661 P.2d 303

**TERRELL, INC., an Idaho Corporation, Plaintiff-Appellant,**

v.

**ROBERT DeSHAZO BUILDERS, INC., an Idaho Corporation, Defendant-Respondent.**

No. 13899.

Supreme Court of Idaho.

March 25, 1983.

Brian F. McColl of McKee & Harwood, Boise, for plaintiff-appellant.

Richard H. Greener of Clemons, Cosho & Humphrey, Boise, for defendant-respondent.

BAKES, Justice.

Plaintiff appellant, Terrell, Inc., filed its original complaint on August 29, 1979, seeking recovery of $6,488.60 for plumbing materials and services sold on account to defendant respondent, Robert DeShazo Builders, Inc., from February 28, 1975, through September 27, 1976, plus finance charges of 1½% per month on the outstanding balance of respondent's open account, a total of $4,525.08. Respondent answered and counterclaimed, alleging that the finance charge of 1½% per month imposed by appellant on respondent's past due accounts was usurious and sought judgment against appellant for the sum of $9,050.16, pursuant to the statutory usury penalty prescribed in I.C. § 28–22–107. Appellant then filed an amended complaint on February 12, 1980, seeking recovery of the outstanding balance on the open account, plus interest at the rate of 8% per annum on the account balance, in accordance with then effective I.C. § 28–22–104, commencing December 27, 1976, and attorney fees. The trial court, upon appellant's motion and respondent's cross motion for summary judgments on the issue of usury, in memorandum decisions dated June 25, 1980, and July 29, 1980, determined that appellant's 1½% monthly finance charge on respondent's open accounts was usurious under I.C. § 28–22–107, and granted respondent's motion for summary judgment. After the court denied appellant's motion for reconsideration, the court's summary judgment was certified for appeal pursuant to I.R.C.P. 54(b). Appellant appealed the summary judgment entered on respondent's counterclaim.

No genuine questions of material fact are alleged to exist or shown in the record in relation to whether the appellant attempted to charge a 1½% per month service charge on respondent's unpaid accounts. It is undisputed that appellant included the following provision in its monthly billing statements sent to respondent: "A 1½% monthly service charge (18% annually) will be added to any account not paid by thirty days past the 10th of the month following invoicing." Hence, the question for our review on appeal is whether the trial court erred in determining as a matter of law that appellant's attempt to collect a finance charge of 1½% per month on respondent's past due

accounts was usurious. We hold that appellant's imposition of the 1½% per month service charge did not constitute usury and that the trial court erred in entering summary judgment in favor of respondent on its counterclaim. Consequently, we reverse.

The district court relied on I.C. § 28–22–104 and I.C. § 28–22–107. I.C. § 28–22–104 establishes the legal rates of interest that are allowed when no express contract fixes a different rate. At the time appellant filed its complaint, I.C. § 28–22–104(7) allowed an annual interest rate of 8% on "[m]oney due upon open accounts after three (3) months from the date of the last item."[1] I.C. § 28–22–107 provides, in relevant part:

"The taking, receiving, reserving, or charging a rate of interest greater than is allowed by this chapter, when knowingly done, shall be deemed a forfeiture by the person so taking, receiving, reserving or charging to the benefit of the person paying or being charged, of the entire interest which the contract carries with it or which has been agreed to be paid thereon, plus twice the amount of such interest. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back the amount of the interest thus paid from the person taking or receiving the same, plus twice the amount of such interest in addition ...."

The district court reasoned that "[t]his statute [I.C. § 28–22–107] provides that charging a rate of interest greater than 8% (See 28–22–104 of the Idaho Code), when knowingly done, shall be deemed a forfeiture by the person so charging to the benefit of the person being charged, of the entire interest which the contract carries with it, plus twice the amount of such interest."

The district court, however, reached its decision without the benefit of *Rangen, Inc. v. Valley Trout Farms, Inc.,* 104 Idaho 284, 658 P.2d 955 (Idaho 1983), a decision

recently issued by this Court which is controlling on the issue of whether the 1½% per month charge imposed by appellant on past due accounts is usurious and subjects appellant to the penalties of I.C. § 28–22–107.

In *Rangen,* this Court defined usury as "[t]he taking, receiving, reserving, or charging a rate of interest greater than is allowed by this chapter when knowingly done. I.C. § 28–22–107." *Rangen, Inc. v. Valley Trout Farms, Inc.,* 104 Idaho 284, at 286, 658 P.2d 955 at 957. The Court in *Rangen* stated that "to constitute usury, there must be excessive interest or compensation on either a loan of money, or forbearance or extension of payment on an existing debt," *supra* at 286, 658 P.2d at 957, *citing Transportation Equipment Rentals, Inc. v. Ivie,* 96 Idaho 223, 526 P.2d 828 (1974); *Meridian Bowling Lanes, Inc. v. Brown,* 90 Idaho 403, 412 P.2d 586 (1966); *Freedman v. Hendershott,* 77 Idaho 213, 290 P.2d 738 (1955); *Bell v. Idaho Finance Co.,* 73 Idaho 560, 255 P.2d 715 (1953). The service charge imposed by appellant in this case is clearly not a loan of money. Nor, as will be discussed, is it the forbearance or extension of time for payment on an existing debt. Consequently, it was not a usurious charge.

The question at issue in *Rangen* was whether a finance charge of 1%, later increased to 1½% per month on all past due accounts, imposed by a seller-supplier of fish food, constituted forbearance of an existing debt. This Court affirmed the trial court's decision that the transaction was not forbearance on an existing debt, stating that the finance charge was imposed on all past due accounts; that the seller never gave the buyer additional time past the due date of the accounts to pay its bills; and that the seller never expressly agreed or contracted to forego collection or demand for immediate payment. *Supra* at 287, 658 P.2d 958. In *Rangen,* we reviewed the case law of other jurisdictions, *see, e.g., Scientific Products v. Cyto Medical*

---

1. I.C. § 28–22–104 was amended in 1981 to provide for an annual legal rate of interest of 12%. 1981 Idaho Sess.Laws, ch. 157, § 1.

*Laboratory, Inc.,* 457 F.Supp. 1373 (D.Conn. 1978); *Fox v. Federated Dept. Stores, Inc.,* 94 Cal.App.3d 867, 156 Cal.Rptr. 893 (Cal. App.1979); *Crestwood Lumber Co. v. Citizens Savings & Loan Ass'n,* 83 Cal.App.3d 819, 148 Cal.Rptr. 129 (Cal.App.1978), and concluded that, under the better reasoned line of authority, merely demanding a finance charge for late payment was not an agreement to forego or extend time for payment within the meaning of the usury statutes and that such statutes were inapplicable to such a late charge. *Supra* at 289, 658 P.2d 960. *See also Cecil v. Allied Stores Corp.,* 162 Mont. 491, 513 P.2d 704 (Mont.1973); *Wilson v. Dealy,* 222 Tenn. 196, 434 S.W.2d 835 (Tenn.1974).

The facts in the case presently on appeal are similar to those in *Rangen.* Appellant Terrell, Inc., charged 1½% per month on the balances that remained unpaid after thirty days past the due date of outstanding accounts. This late charge was included on appellant's monthly billing statements. The record contains no evidence that respondent objected to the charge until filing its counterclaim. Additionally, the record contains no evidence establishing that appellant ever agreed to extend the time for payment of the account or to forgo collection of the debt or forbear on its demand for immediate payment. As in *Rangen,* the respondent buyer could have avoided the late charge by paying its account when due. Thus, under the rule established in *Rangen, Inc. v. Valley Trout Farms, Inc., supra,* we hold that appellant's charge of 1½% per month late charge on respondent's past due accounts did not constitute a forbearance of an existing debt and, therefore, does not fall within the perimeters of the usury laws.[2]

We reverse the summary judgment of the district court granted in favor of respon-dent on the issue of usury and remand for determination of the remaining issues.

Costs to appellant.

DONALDSON, C.J., and McQUADE, J. Pro Tem., concur.

BISTLINE, Justice, dissenting.

Had we had in *Rangen v. Valley Trout Farms,* 104 Idaho 284, 658 P.2d 955 (1983), the benefit of Justice Huntley's dissent in this case, I am not certain whether my vote would have gone differently in Part I of *Rangen,* wherein I concurred while dissenting in Parts II and III. With the benefit of hindsight, perhaps, I should have written separately in Part I as well.

Obviously there could have been no usury in *Rangen.* This follows from the Court's Part III holding that interest charges of 12 percent and 18 percent are permissible in a transaction between merchants wherein it can be said that such were agreed to. Reviewing that *Rangen* file, I see that Judge Cunningham was asked to specifically so rule, but declined to do so. His ruling on *Rangen's* motion is set out in the opening paragraph of my *Rangen* opinion.

My own thinking in *Rangen,* not separately stated, was that although Rangen was declaring itself entitled to an 18 percent interest charge for late payments, Valley Trout was not impressed and told Rangen that it was not paying such interest. Hence, my view was primarily that there simply was no agreement between the parties for 12 percent and 18 percent interest, and Rangen was merely expelling wind. Rangen claimed that certain provisions of the remarkable UCC created the agreement for excessive interest, and under that theory this Court remanded to the district court for further proceedings relative to the "late charges." I think all are agreed that the parties to a transaction may under the present beneficent provisions of the law

---

**2.** The Court in *Rangen* went on to determine whether the late charge included on the seller's billing statements became collectible as a part of the contract between the seller and buyer under I.C. § 28–22–207, as a liquidated damages clause. It is unnecessary to reach that issue in this appeal, however, because appellant amended its complaint to seek recovery of only an 8% interest rate on the respondent's allegedly past due account, in accordance with then effective I.C. § 28–22–104.

agree to pay almost any amount of interest—provided it is properly done.

The problematic issue needing definition in this case is the legal significance to be attached to the act of a creditor trying to collect on a unilateral claim that he was entitled to 18 percent interest and if that is prohibited by the court, whether he can then purge himself by withdrawing that claim—as was done here by the creditor in amending his complaint. Today our concern is with the charge of interest on open accounts, and I have joined the dissent of Justice Huntley, disavowing my concurrence in *Rangen,* Part I, to the extent that it is inconsistent with that which I have written above.

HUNTLEY, Justice, dissenting

This case is but another installment in the saga of judicial rewriting of the usury statutes. While the court gives lip service to the statutory law, it continues to rely on judicial niceties, constructed out of whole cloth, to avoid applying the usury statutes as written.

By its enactment of Idaho's usury statutes, the legislature has declared, in plain terms, the public policy of this state. That policy has been well expressed:

"It has always been recognized that in the power of the lender to relieve the wants of the buyer lies the germ of oppression, and with the humanitarian purpose of protecting needy borrowers from unconscionable money lenders, the legislatures of many states have enacted laws designed for the protection of borrowers against the oppressive exactions of moneylenders which often they are powerless to resist, limiting the rate of interest the lender of money may charge for its use.

.     .     .     .     .

Although usury laws may be and often are harsh in their language and effect, yet insofar as they establish a legislative policy, the courts must apply and enforce them; a court does its full duty when it carefully inquires whether there is a violation of the law, and if there is, gives to it the effect prescribed by the legislature." 45 Am.Jur.2d *Interest and Usury* § 4 (1969) (Footnotes omitted.)

This court, ignoring that policy, and ignoring the fact that the charging of excessive interest is detrimental not only to the particular debtor involved, but also to the general health of the economy, seeks whenever possible to fabricate a judicial exception to prevent application of the plain meaning of the usury statutes.

In the instant case, the majority avoids application of the statute by positing that 18% interest on open account balances which are past due is not really interest at all because it is not a "loan or forbearance," words which do not even appear in the Idaho Code usury laws. The fact is that DeShazo was paying Terrell 18 cents per annum for every dollar, or dollar's worth of property, obtained from and owed to Terrell. The only thing provided to DeShazo by Terrell in return for the payment of the 18% interest was the use of its money, measured by capital goods unpaid for.

One area where this court has chosen to avoid application of the usury laws is the "credit sale" transaction. The court held in *Peterson v. Philco Finance Corp.,* 91 Idaho 644, 428 P.2d 961 (1967), that a credit sale is not subject to the usury laws of this state. The door was thus opened for loans to be disguised as "credit sales" and thereby escape usury penalties. This court was even willing to oblige a business so seeking to pass its loan off as an installment credit sale. In *Buchanan v. Dairy Cows,* 97 Idaho 481, 547 P.2d 526 (1976), this court joined with the lender in the fiction of calling a loan of money to purchase dairy cows a "credit sale," even though the evidence was clearly to the contrary.[1] The author of the majority opinion in this case, dissenting in *Transportation Equipment Rentals v. Ivie,* 96 Idaho 223, 526 P.2d 828 (1974), pointed

---

1. See, Jarvis, Which is to be Master: A Comparison of Credit Sale and Loan, 13 Idaho L.Rev. 117 (1976). *See also, Buchanan, supra,* at 483, 547 P.2d at 528 (dissenting opinion of McFadden, J.).

out the court's error in failing to see through an "artfully disguised financial arrangement" which the majority had accepted as a lease. The effect of that decision was a further erosion of the usury laws of Idaho.[2]

This court utilized the so-called "loan or forbearance" test for exception to the usury statutes in *Bell v. Idaho Finance Co.,* 73 Idaho 560, 255 P.2d 715 (1953), and in the recent opinion, *Rangen v. Valley Trout Farms, Inc.,* 104 Idaho 284, 658 P.2d 955 (1983), used that dodge again to avoid holding an 18% interest charge on an account for trout feed usurious.

Justice would be better served if this court, failing to find a pretext for holding all usury laws unconstitutional, would apply its intellectual energies toward implementing the clear legislative policy set forth in the statutes. At this point, it appears that the only redress will be for the legislature to send this court a message by enacting amendments to the statute which expressly remove the exceptions we have legislated.

The court's electing not to follow the clear language of the applicable statutes in the instant case is particularly manifest. At the time of the events giving rise to this appeal, two sections in Title 28, Ch. 22, I.C. set out statutory interest rates. I.C. § 28–22–105 provided for a maximum rate of interest which could be charged "on money due or to become due on any contract" of ten per cent (10%) per annum with certain specified exceptions not applicable in this case. That section applied to written agreements between parties for the payment of a certain rate of interest. As to situations where only an oral agreement existed, or no agreement existed at all, for the payment of a certain rate of interest, I.C. § 28–22–104 provided for a "legal" rate of interest "at the rate of eight cents (8¢) on the hundred by the year" or 8%, applica-

ble to certain specified transactions, including "[m]oney due on open accounts after three (3) months from the date of the last item."

I.C. § 28–22–107 stated, in part:

"Usury—Charging—Penalty—Indorsee in due course, exception.—The taking, receiving, reserving, or *charging a rate of interest greater than is allowed by this chapter,* when knowingly done, shall be deemed a forfeiture by the person so taking, receiving, reserving or charging to the benefit of the person paying or being charged, of the entire interest which the contract carries with it or which has been agreed to be paid thereon, plus twice the amount of such interest." (Emphasis added.)

The trial court relied on I.C. § 28–22–104, there being no express agreement between the parties as to a rate of interest to be charged on their open account contract.[3] It read the clear language of I.C. § 28–22–107, *supra,* and reasoned that since plaintiff had knowingly charged 18% interest on defendant's account balance past due, it had charged "a rate of interest greater than is allowed by this chapter." I can find no reason to reverse the judgment of the district court.

It is true that the language in § 28–22–107 which states, "interest which the contract carries with it or which has been agreed to be paid thereon" seems to contemplate a situation where the parties have expressly agreed to a given rate of interest, making the statute not applicable to a § 28–22–104 situation. However, § 28–22–104 is not limited to cases where there was no agreement at all; it applies to cases where there is "no express contract in writing." Moreover, the word "contract" in § 28–22–107 appears to refer to the transaction as a whole, rather than any separate agreement as to the amount of interest to be paid.

This is evidenced by plaintiff's comptroller, who stated by affidavit that "there was no agreement between plaintiff and defendant wherein defendant acquiesced to the payment of said service charges."

2. For a discussion of this case and the weakened effect of Idaho's usury laws, see Wald, Usury: Is This Defense Disfavored in Idaho? 12 Idaho L.Rev. 115 (1975).

3. It was apparently undisputed that plaintiff's interest charge was not agreed to by defendant.

It might be argued that § 28–22–104 provides an allowable rate of interest for those situations where no rate is otherwise provided for, and that it was never intended to be read as a "maximum" rate of interest. Granted that argument is possible, but it is overcome by the fact that. § 28–22–104 allows 8% interest charges, and does not allow 18%; an 18% interest rate, knowingly charged, is "greater than is allowed by this chapter," pursuant to § 28–22–107, and therefore constitutes usury.

Perhaps the most persuasive argument in favor of the enforcement of § 28–22–104 by means of § 28–22–107 is that there is no other way of preventing usurious interest rates in transactions where the debtor has not expressly agreed in writing to the unlawfully high interest rate, that being the prerequisite to application of I.C. § 28–22–105. In order for § 28–22–105 to apply in this case, it would have to be shown that defendants assented to the 18% interest as an additional term in their contract, by virtue of their continuing to do business with plaintiff, on plaintiff's terms. That might not have been difficult at all to prove. *Rangen, supra,* taken together with this case, indicates that under the present state of the law in Idaho, Terrell could have both collected its 18% interest as claimed in its original complaint and still escaped the usury penalties. In amending its complaint to only claim 8% interest, Terrell was unduly apprehensive and underestimated this court's ability to find ways not to enforce the usury statutes.