833 P.2d 128

**IRWIN ROGERS INSURANCE AGENCY, INC., an Idaho corporation, Plaintiff–Counterdefendant–Respondent,**

**v.**

**Ronald G. MURPHY and Lisa Murphy, husband and wife, Defendants–Counterclaimants–Appellants.**

**No. 19000.**

Court of Appeals of Idaho.

May 28, 1992.

William F. Lee, Boise, for appellants.

Elam, Burke & Boyd, Boise, for respondent. Bobbi K. Dominick argued.

**SWANSTROM, Judge.**

Irwin Rogers Insurance Agency, Inc., filed an action to enforce a promissory note signed by Ronald and Lisa Murphy. The Murphys challenged the validity of the note and additionally filed counterclaims alleging fraud, breach of contract, breach of the covenant of good faith, and asserting violations of the consumer protection act, the consumer credit codes and the usury laws. On separate motions, the district court granted summary judgment in favor of the insurance agency, holding the Murphys liable on the note, and granted summary judgment dismissing the Murphys' counterclaims. We affirm.

### Facts

The Murphys operate a pump and well-drilling business out of their home in Boise, Idaho. From 1979 through 1988 they obtained insurance coverage through Irwin Rogers, the president of Irwin Rogers Insurance Agency, Inc., (the insurance agency). The coverage included liability policies for vehicles and property, workers' compensation policies, well-drillers bonds and other policies. The Murphys financed some of the basic premium payments through various finance companies, annually renewing these finance agreements through the insurance agency. Other premium payments were incurred irregularly to the agency itself. These were carried on accounts which the agency maintained and billed to the Murphys on a monthly basis. These billings included a description of the current and past due account balances and the late and finance charges assessed. As a result of the seasonal nature of the Murphys' business and the consequent fluctuation in their income, the Murphys began to have difficulty making the payments due on the policies. During this time, the Murphys made irregular payments on their accounts.

In the spring of 1986, the insurance agency decided it could no longer continue doing business with the Murphys without a signed note for the balance of their unpaid accounts. The insurance agency prepared a demand note for $13,854.05—the total amount it calculated to be owing on the Murphys' unpaid accounts—which provided for an annual interest rate of ten percent. The Murphys signed the note on May 30, 1986, and the insurance agency continued to provide insurance coverage. The basis of the parties' dispute centers on the alleged circumstances surrounding the note's execution. In his affidavit and deposition, Irwin Rogers maintains that on May 30, 1986, he met with Ronald Murphy in the Murphys' office and explained the need for the promissory note, that Murphy was agreeable, and that Rogers left the office to prepare the note. Rogers states that after he prepared the note he called the Murphys who agreed to meet him at a mall where Ronald and Lisa Murphy signed the note while in the parking lot. However, because this is a review of an order on summary judgment, we consider the facts as alleged by the Murphys.

According to the Murphys' affidavits, Rogers contacted them by telephone and told them their signatures were required on some "insurance papers" in order to continue coverage. The parties agreed to meet at the parking lot of a mall, where Rogers presented the papers for their signatures. Holding the papers on a clipboard, Rogers flipped through them and pointed to the places each of the Murphys was to sign. Aside from Rogers' statement that the papers were necessary for continued insurance, there were no other representations or inquiries as to the specific nature or purpose of any of the documents. Both Ronald and Lisa Murphy signed these documents, including the promissory note, without reading any of them. The entire transaction took place in less than five minutes. Rogers did not provide copies to the Murphys of any of the signed documents at the end of the meeting.

In the Spring of 1988, the Murphys decided to procure insurance coverage through another insurance agent, and stopped doing business with the Irwin Rogers Insurance Agency. The insurance agency continued to send monthly statements to the Murphys requesting payments on the note's remaining balance of $12,271.95. On July 29,

1988, by certified letter, Rogers demanded payment on the note. When the Murphys refused to pay, the insurance agency brought this action to enforce the promissory note.

The Murphys denied liability on the note, alleging that their signatures had been procured by fraud. They additionally sought affirmative relief, filing counterclaims alleging breach of a prior payment plan agreement, breach of the covenant of good faith and fair dealing, fraud, violation of the consumer protection act, and violation of Idaho's consumer credit laws prescribing maximum rates of interest. The district court granted summary judgment in favor of the insurance agency, holding the Murphys liable on the note, and dismissing all of their counterclaims. The Murphys appeal.

### Standard of Review

When evaluating a grant of summary judgment we will review "the pleadings, depositions, and admissions on file, together with the affidavits, if any, to determine whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c); *Ray v. Nampa School Dist. No. 131*, 120 Idaho 117, 814 P.2d 17 (1991). We liberally construe facts in the existing record, and draw all reasonable inferences therefrom, in favor of the party opposing the motion. *Ray*, 120 Idaho at 122, 814 P.2d at 19.

### I. *The Validity of the Note*

The Murphys do not contest the meaning of the promissory note or the authenticity of their signatures. Rather, they contend Rogers obtained their signatures by concealing the note's true identity. Specifically, the Murphys assert that Rogers "tricked" them into signing the note by presenting it as one of several "insurance documents" needing their signatures.

■ The rule in Idaho is well established that a party's failure to read a contract will not excuse his performance. *Kloppenburg v. Mays*, 60 Idaho 19, 88 P.2d 513 (1939); *Liebelt v. Liebelt*, 118 Idaho 845, 801 P.2d 52 (Ct.App.1990). "[A] party who signs an instrument manifests assent to it and may not later complain that he did not read the instrument or that he did not understand its contents." J. CALAMARI & J. PERILLO, THE LAW OF CONTRACTS § 9–42 at 28–29 (1977). This rule is qualified to the extent that the party's signature was procured by fraud, in which case the party's assent is deemed invalid. *See West v. Prater*, 57 Idaho 583, 67 P.2d 273 (1937). For this defense to apply, a party must show fraud which would have prevented a reasonable person from reading the contract sought to be avoided. *Kloppenburg, supra; Liebelt, supra.*

■ We conclude that the facts alleged by the Murphys are insufficient to establish a prima facie case of fraud. The promissory note in this case is an ordinary, standard-size draft with the words "PROMISE TO PAY TO THE ORDER OF IRWIN ROGERS INSURANCE AGENCY THIRTEEN THOUSAND EIGHT HUNDRED FIFTY FOUR AND 05/100 DOLLARS" clearly appearing below the Murphys' typed names. Rogers' general representation—that the documents were "insurance papers" necessary for continued coverage—in no way obviated the need for the Murphys to read them before agreeing to be bound by their terms. Our courts have recognized that a party may be estopped by his own negligence to deny liability on a written instrument signed—but not read—by him, where he had the opportunity to read the instrument and was not fraudulently dissuaded or prevented from reading it. *West, supra; Liebelt, supra.* Such are the circumstances presented in this case. The Murphys have alleged no act on the part of the agent which can reasonably be viewed as either preventing or dissuading them from looking at the document. Had they looked at it, they plainly would have understood the instrument to be a promissory note.

■ The Murphys further argue that, as their insurance agent, Irwin Rogers had an affirmative duty, arising from his longstanding business relationship with them,

to tell them they were signing a promissory note. Although fraud may be established by silence where a duty to speak exists, *G & M Farms v. Funk Irr. Co.*, 119 Idaho 514, 808 P.2d 851 (1991), this duty arises only where the information to be conveyed is not already in the possession of the other party. *Jones v. Maestas*, 108 Idaho 69, 696 P.2d 920 (Ct.App.1985). Where, as here, the necessary information was readily ascertainable from the face of the instrument, there was no duty on the part of the insurance agent to speak.

For the reasons stated above, we uphold the district court's summary judgment order rejecting the Murphys' fraud defense, and holding the Murphys liable on the note.

### II. *The Murphys' Counterclaims Fraud and Misrepresentation*

■ The Murphys also assert fraud and misrepresentation as affirmative actions in tort. Actionable fraud may be intentional or constructive. *Sorenson v. Adams*, 98 Idaho 708, 571 P.2d 769 (1977). An essential element of the torts of both fraudulent and negligent misrepresentation, whether actual or constructive, is that the recipient's reliance on the representation be justified. *Stewart Title of Idaho, Inc. v. Nampa Land Title Co.*, 110 Idaho 330, 715 P.2d 1000 (1986). Because the alleged representation of Rogers was insufficient to excuse the Murphys from reading the instrument, their fraud and misrepresentation claims lack the necessary element of justifiable reliance. We find no error in the district court's dismissal of these claims.

### Breach of the Oral Payment Plan Agreement

■ The Murphys also contend that the district court erroneously dismissed their claim for breach of a prior, oral payment plan agreement, the terms of which allegedly permitted the Murphys to pay the insurance agency "as funds became available" to them. Both parties admit to having operated under some type of a payment program accommodating the seasonal nature of the Murphys' business. However, parties are free to agree to modify their contracts. *Traylor v. Henkels & McCoy, Inc.*, 99 Idaho 560, 585 P.2d 970 (1978). The existence of a pay plan between the parties, whatever its terms, in no way precluded the parties from subsequently agreeing to different terms. The promissory note expressly required the Murphys to pay interest at a rate of ten percent per annum. It also provided that their to make these payments entitled the payee, Irwin Rogers Insurance Agency, to declare the entire amount of the note due and payable on demand. These written terms effectively superseded any prior inconsistent terms, and are binding on the Murphys.

### Covenant of Good Faith and Fair Dealing

■ The Murphys also contend that the district court erred in granting summary judgment on their claim for breach of the covenant of good faith and fair dealing. Good faith and fair dealing are implied obligations in every contract and are breached when action by either party violates, nullifies or significantly impairs any benefit of a contract. *Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 121 Idaho 266, 824 P.2d 841 (1991). However, this contractual duty to act in good faith arises only in connection with terms agreed to by the parties. *Id.* at 863. It is distinct from the duties arising out of a fiduciary relationship, the breach of which gives rise to an action in tort, and which has not been alleged in this case.

The Murphys contend there exists a genuine issue of material fact whether the insurance agency breached the implied covenant of good faith and fair dealing when it procured a promissory note that altered the terms of the oral pay plan agreement. They argue, essentially, that the insurance agency's attempt to obtain the promissory note, which was payable in full, with interest, upon demand, unfairly deprived the Murphys of the benefits of an alleged oral agreement which allowed them to make irregular payments on their account. We disagree.

■ In order to establish the impairment of a contractual right or benefit, the party

asserting the breach of the covenant must first establish that such a right or benefit existed. In this case, the Murphys contend that the oral agreement gave them the right to pay their accounts "as funds became available." Even if actually agreed to by the parties, these terms are too indefinite and uncertain to constitute an enforceable contract right. *See Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.,* 119 Idaho 171, 173, 804 P.2d 900, 902 (1991). We therefore conclude that the impairment of such an alleged right or benefit is insufficient upon which to base an action for breach of the covenant of good faith. Accordingly, the district court did not err when it dismissed that claim.

### Claims Relating to Charges Assessed On the Underlying Obligation

The Murphys also assert that the monthly compounded charges of one and one-half percent assessed against their past due accounts from April, 1982, and March, 1983, were usurious and in violation of state statutes then in effect. *See* I.C. §§ 28–22–105 through 28–22–112 (1983 supp.) *repealed by* 1983 Idaho Sess. Laws, ch. 119, § 2 and I.C. § 28–49–106. They further contend that the monthly compounding from March, 1983, until the time the agency obtained the promissory note in May, 1986, violated the Idaho Credit Code provisions, which allow the compounding of interest by written agreement only. *See* I.C. §§ 28–42–404, *as added by* 1983 Idaho Sess. Laws, ch. 119, § 3. The Murphys argue that the charges imposed against their accounts, although labeled "late charges" and "finance charges," are in fact interest charges, and that because they never agreed in writing to the compounding of interest, the charges were unlawful.

Considering first the contention that charges were in violation of the now-repealed usury statute, we conclude, as did the district court in dismissing the claim on summary judgment, that the charges assessed were not "usurious" as defined in *Rangen Inc. v. Valley Trout Farms, Inc.,* 104 Idaho 284, 658 P.2d 955 (1983) and *Terrell, Inc. v. Robert DeShazo Builders,* 104 Idaho 518, 661 P.2d 303 (1983).[1] In *Rangen,* the Idaho Supreme Court held that "to constitute usury, there must be excessive interest or compensation on either a loan of money, or forbearance or extension of payment on an existing debt." *Terrell,* 104 Idaho at 519, 661 P.2d at 304 (quoting *Rangen,* 104 Idaho at 286, 658 P.2d at 957); *see also Bell v. Idaho Finance Co.,* 73 Idaho 560, 255 P.2d 715 (1953).

The record before us contains no evidence establishing that the insurance agency ever agreed to extend time for payment in consideration for the late charges. Although Ronald Murphy refers to a conversation in his deposition that arguably suggests an arrangement for delayed payments, his testimony makes clear that such conversation did not occur until 1987, well past the repeal of the usury statute. Accordingly, the Murphys' claim of usury must fail.

We next examine the Murphys' assertion that the monthly compounding of charges between March, 1983, and May, 1986, violated the subsequently enacted Idaho Credit Code. The Credit Code does not define or deal with the term "usury," but specifically regulates both "interest" and "finance charges." Hence, the analysis prescribed in *Terrell* and *Rangen* for determining whether charges are "usurious" under the former statute is not controlling. Nevertheless, we need not decide whether the charges assessed by the insur-

---

1. The court alternatively ruled that the Murphys had waived their right to raise the usury defense by failing to object to the charges at the time they received their account statements. We do not view the law as supportive of the court's latter reasoning. *See Bjornstad v. Perry,* 92 Idaho 402, 443 P.2d 999 (1968) (since the state has an interest in enforcement of the usury statute, a party cannot estop himself from asserting a plea of usury; estoppel is inapplicable to usury defense); *accord Ford v. Washington Nat'l Bldg. & Loan Inv. Ass'n,* 10 Idaho 30, 76 P. 1010 (1904). The Idaho Credit Code, replacing the former usury statutes, expressly precludes a debtor from waiving his rights and benefits under the act. I.C. § 28–41–106, *as added by* 1983 Idaho Sess. Laws, ch. 119, § 3, p. 264.

ance agency against the Murphys' accounts would be characterized as "interest" under the Credit Code, for the Code expressly excludes from its scope the sale of insurance by an insurer, the financing of such insurance, and any other act of the insurer as an insurer. I.C. §§ 28–41–202; 28–44–102.[2] The Murphys have failed to establish that the charges they complain of flow from transactions within the scope of the statute under which they seek relief. Consequently, we conclude that the district did not err in dismissing their claim.

### Consumer Protection Act Claim

■ The Murphys further contend that the insurance company violated the Consumer Protection Act, I.C. § 48–601, *et seq.* which requires delivery to a consumer, at the time of his signature, a copy of the signed document. I.C. § 48–603(13). The district judge ruled that the insurance agency was specifically exempted from the Act's purview and dismissed the claim. We agree.

The Consumer Protection Act enumerates and declares as unlawful certain "unfair methods of competition [and] unfair and deceptive acts or practices in the conduct of any trade or commerce." I.C. § 48–603. However, the Act specifically excludes from its provisions "[p]ersons subject to chapter 13, title 41, Idaho Code (sections 41–1301 through 41–1327), defining, and providing for the determination by the director of the department of insurance of unfair methods of competition or unfair or deceptive acts or practices in the business of insurance." I.C. § 48–605(3). The Murphys maintain that the insurance agency's failure to provide them with a copy of the signed promissory note was not an act arising within "the business of insurance" and therefore the exemption is inapplicable to that transaction.

In determining whether the methods and practices relating to a debt are covered by the Act, our Supreme Court has declared the crucial event to be the sale which brings the debt into existence. *See In Re Western Acceptance Corp.*, 117 Idaho 399, 788 P.2d 214 (1990). "Debts that do not arise out of the sale of goods and services subject to the provisions of the Act are not covered." *Id.* 117 Idaho at 401, 788 P.2d at 216. It is undisputed that the debt underlying the promissory note arose from the purchase of insurance through an insurance agent, a sale explicitly excluded from the Act's provisions. We therefore conclude that the district court correctly applied the Act's exemption and dismissed the claim.

### Award of Costs and Attorney Fees

We next consider the district court's award of costs and attorney fees to the insurance agency. The Murphys do not dispute the insurance agency's entitlement to a reasonable attorney fee under I.C. § 12–120(3) if the agency is found, ultimately, to be the prevailing party. However, they argue that trial court's award erroneously included costs and fees incurred by the insurance agency's unsuccessful resistance of the Murphys' motion to set aside a default judgment which had been entered in the early stages of the litigation. They also contend that the court erred by failing to address the factors contained in I.R.C.P. 54(e)(3), and by improperly basing its award upon punitive factors.

■ We turn first to the Murphys' argument that the insurance agency is not entitled to recover costs and fees incurred in its unsuccessful resistance of their motion to set aside the earlier default judgment. We note that the apportionment of costs and attorney fees is permitted where the court first finds, in the exercise of its

---

**2.** Idaho Code § 28–41–202 provides:

**Exclusions.**—This act does not apply to: ... (2) The sale of insurance by an insurer, except as otherwise provided in the chapter on insurance, chapter 44, title 28, Idaho Code; . . . .

Chapter 44, title 28 of the Code provides that, except for the provision on cancellation by a

creditor—which is irrelevant in this case—no provision in the chapter applies to loans the primary purpose of which is the financing of insurance. I.C. § 28–44–102(2). The statute also states that none of the provisions of the Credit Code apply to persons acting as insurers. I.C. § 28–44–102(3).

sound discretion, that both parties prevailed in part. I.R.C.P. 54(d)(1)(B); I.R.C.P. 54(e)(1). Thus, unless a "prevailing party" is determined to have prevailed only in part, that party is entitled to its full reasonable attorney fee. In determining which of the parties has prevailed, the trial court is required to consider the final result of the action in relation to the relief sought by the respective parties, whether there were multiple claims and issues, and the extent to which each party prevailed upon each of the following issues or claims. I.R.C.P. 54(d)(1)(B); *Ramco v. H–K Contractors, Inc.*, 118 Idaho 108, 113, 794 P.2d 1381, 1388 (1990); *Nalen v. Jenkins*, 113 Idaho 79, 741 P.2d 366 (Ct.App.1987). In the present situation the Murphys' succeeded in setting aside the default judgment, only to have the insurance agency ultimately obtain summary judgment on the very same complaint. We find no error in the district court's determination that the insurance agency was the sole prevailing party. Accordingly we find no basis for awarding the insurance agency less than the full amount of its costs and its reasonable attorney fees.

■ Next, we address the Murphys' contention that the district court abused its discretion by failing to address the relevant factors in arriving at the fee amount. In determining the amount of a "reasonable attorney fee" the court is required to *consider* the existence and applicability of the factors set forth at I.R.C.P. 54(e)(3). However, the court is not required to make specific findings demonstrating how it employed any of those factors in reaching an award amount. *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 351, 766 P.2d 1227, 1232 (1988). Hence, failure to specifically address each separate factor does not, by itself, constitute an abuse of discretion. *Id.* Rather, it is incumbent upon the appellant to demonstrate that the court failed to consider or apply the appropriate criteria. *Id.*

■ The Murphys argue that the district court arrived at the amount of the fee award by considering an improper factor of punishment. They refer to the court's decision on costs and fees, in which it concluded, "[the insurance agency] needlessly incurred substantial costs to recover on a promissory note which was voluntarily signed by [the Murphys] and is entitled to recover all attorney's fees charged [it]." We do not perceive this statement as disclosing an improper intent to punish the Murphys, but view it as reflecting the court's rejection of the Murphys' apportionment argument and its desire to make whole the insurance agency, who prevailed on all claims in the action. *See Brinkman*, 115 Idaho at 351, 766 P.2d at 1232 (fee award amount simply making party whole not erroneous). Aside from their contention, rejected above, that the expenses relating to the default judgment be excluded from the award, the Murphys do not argue that the award is excessive or otherwise inappropriate. Finding no error, we uphold the award of costs and fees.

### Conclusion

For the above reasons, we affirm the district court's orders granting summary judgment on the insurance agency's complaint and dismissing the Murphys' counterclaims. As the prevailing party in this appeal, the insurance agency is entitled to recover its costs and reasonable attorney fees as provided by the express terms of the note, and also as provided in I.C. § 12–120(3). The amount of such award is to be determined in accordance with I.A.R. 40 and 41.

WALTERS, C.J., and HART, J., Pro Tem., concur.