BROAD & BRANFORD PLACE CORPORATION, PLAINTIFF-RESPONDENT, v. J. J. HOCKENJOS CO., DEFENDANT-APPELLANT.

Argued May 3, 1944—Decided September 15, 1944.

Before Justices PARKER, HEHER and COLIE.

For the appellant, *David H. Yonneff* (*Charles C. Trelease*, of counsel).

For the respondent, *Milton M. Unger*.

The opinion of the court was delivered by

HEHER, J. The essential question here is whether a landlord's refusal to sanction the subletting of the demised premises and the use thereof for a purpose not authorized by the lease was "unreasonable," and therefore a breach of covenants obliging the tenant to devote the premises to a particular use and not to sublet or underlet them, without the landlord's consent.

The granting clause of the lease provided that the premises were "to be used and occupied for the business" thereinafter specified, "and for no other use or business whatsoever (except with written consent of lessor, which consent shall not be unreasonably withheld);" and the letting was expressed to be made on certain "terms and conditions, all of which lessee covenants and agrees with lessor, and its successors and assigns, to keep and perform"—these among others: "2. The demised premises shall be used and occupied by lessee for the purpose of the sale at retail of paint, varnish, painters' and artists' supplies and kindred articles, usually sold in retail paint stores;" and "5. This lease shall not be mortgaged or assigned without the written consent of lessor first had and obtained, nor shall the whole or any part of the demised premises be sublet or underlet without the prior written consent of lessor in each instance, which consent shall not be unreasonably withheld." The lessee also bound itself not to make any alteration or improvement without the written consent of the lessor; and it was stipulated that such consent "shall not be unreasonably withheld."

The demised premises consisted of a ground floor store and basement, 15 feet 6 inches x 43 feet, at the southeast corner of Branford Place and Treat Place, in the City of Newark, known as 14 Branford Place. The term was set to begin on April 1st, 1939, and end on April 30th, 1944; and rent was reserved at the rate of $260 per month. The agreed state of the case discloses that "previous to April 22d, 1943, the defendant had removed from the leased premises to another location because of business exigencies and that the premises were then idle;" and that on that day the tenant advised the landlord of its "receipt of an offer of one Melvin Levine

to sublet the premises, to be used by the latter for the retail sale of dressed poultry," and requested the landlord's "consent thereto," which was refused. There is an intimation in correspondence between counsel for the parties, but no proof otherwise so far as the agreed case shows, that other tenants in the building of which the particular premises were but a part, abutting on Broad Street and Branford Place, holding under the respondent landlord, had voiced objection to the proposed use of the premises as one injurious to their interests, and that this had influenced the disapproving action. An *ex parte* affidavit submitted by the landlord's president to the Essex Circuit Court, on a motion to transfer the cause to that court (of this, more hereafter), states that the landlord is a corporate "subsidiary" of 823 Broad Street Corporation, the owner of the property known as Nos. 823-825-827 Broad Street, fronting 65 feet on Broad Street and extending 172 feet along Branford Place to Treat Place, and that it "controls the premises of which the demised premises are a part."

The landlord sued for the rent for the month of May, 1943. The tenant, by way of an answer and specification of defenses, pleaded that the landlord's refusal of assent to the proposed subletting was unreasonable, and thereby it was "deprived of and evicted from the beneficial use of the premises;" and, by counterclaim, it demanded damages for breach of covenant in the sum of $2,700, *i. e.*, "the rental to be paid to defendant under the terms of the proposed subletting," for the remainder of the term, at the rate of $225 per month. Defendant thereupon moved the Essex Circuit Court for an order adjudging that there was reasonable cause to believe that the counterclaim was founded on fact, and there was a reasonable chance for success by the counterclaimant upon the trial of the action, and thus to secure the transfer of the action to the Circuit Court pursuant to *R. S.* 2 :8–44 and 2 :8–45. The motion was denied, to quote the language of Judge William A. Smith, "principally on the ground that the matter set up in the counterclaim is mainly by way of set-off and there could be no recovery under it which would exceed the jurisdiction of the District Court." The order

refusing the transfer recites that "the matter set up \* \* \*
in the counterclaim is available to the defendant, if at all,
only by way of set-off, and that there could be no recovery
therein which would exceed the jurisdiction of the District
Court." Seemingly, this theory was acquiesced in by the
parties and adopted by the District Court judge on the trial
of the action. The counterclaim was considered as one for
the recovery of one month's rent under the proposed sublease.
The state of the case reveals nothing *contra*. There was no
motion addressed to the propriety or legal sufficiency of the
counterclaim.

A jury was empaneled to try the issue; but the District
Court judge directed a verdict for the landlord at the close
of the counterclaimant's case.

Error is assigned (a) upon the exclusion of evidence offered
by appellant bearing upon the reasonableness of the land-
lord's refusal of consent to the proposed subletting, and (b)
the treatment of the issue of reasonableness as one of law
for the court.

Arbitrary considerations of personal taste, sensibility, or
convenience do not constitute the criteria of the landlord's
duty under an agreement such as this. Personal satisfaction
is not the sole determining factor. Mere whim or caprice,
however honest the judgment, will not suffice. *Gerisch* v.
*Herold,* 82 *N. J. L.* 605; *Whitcomb* v. *Brant,* 76 *Id.* 201;
*Id.* 246; *Vide Williston on Contracts (Rev. Ed.),* § 675A.
And compare, also, *Muller* v. *Beck,* 94 *N. J. L.* 312. The
standard is the action of a reasonable man in the landlord's
position. What would a reasonable man do in the like cir-
cumstances? The term "reasonable" is relative and not readily
definable. As here used, it connotes action according to the
dictates of reason—such as is just, fair and suitable in
the circumstances. And questions of reasonableness of con-
duct and good faith are ordinarily for the judgment of the
triers of the facts. Compare *Gerisch* v. *Herold, supra;*
*Williams* v. *Hirshorn,* 91 *Id.* 419. See, also, *Wigmore on
Evidence (3d ed.),* § 2553; 17 *C. J. S.* 1296, *et seq.* Yet,
such are questions of law for the court when the facts are
undisputed and not fairly susceptible of divergent infer-

ences. Where, upon all the evidence, but one inference may reasonably be drawn, there is no issue for the jury. Compare *Lastowski* v. *Lawnicki*, 115 *N. J. L.* 230; *Edge* v. *Boardwalk Securities Corp., Id.* 286; *Glazer* v. *Klughaupt*, 116 *Id.* 507; *Vide Wigmore on Evidence* (*3d ed.*), § 2553. But, for reasons presently to be stated, we have no occasion to determine whether the evidence adduced here fairly raised a jury question as to the reasonableness of the landlord's action.

The agreed case reveals that the plaintiff was unduly circumscribed in the presentation of evidence on the issue of reasonableness. The law lays upon the tenant in such circumstances the burden of proving the unreasonableness of the landlord's conduct; and the proffered evidence has the quality of relevancy if it is logically and rationally probative of the fact in issue, and is admissible unless excluded by some rule or principle of law. The trial judge, *sua sponte,* barred evidence tending to show the character of the immediate neighborhood, and the business uses to which the surrounding properties were devoted. He seems to have proceeded on the erroneous theory that the landlord's declaration, set forth in correspondence between counsel, that he "did not want the sublessee offered for certain reasons and because his other tenants did not like the business of the sublessee" (this was the whole of the evidence in that regard) was decisive of the issue of reasonableness. In view of the ground taken by the landlord, such evidence was material to the inquiry as to what a reasonable man would do in the circumstances. And it would seem that the correspondence, offered by the tenant to prove the submission of the terms of the proposed sublease and the landlord's action thereon, was not conclusive evidence that the cotenants had objected to the subletting, or that such motivated the landlord's disapprobation. Indeed, it is therein shown that when the landlord first refused his license to sublet, no mention was made of the other tenants' attitude; and it was conceded that they had not then been consulted. However, we have no occasion to pursue this inquiry.

But it is the insistence of respondent that, even so, the

evidence thus offered by the tenant was incompetent, irrelevant and immaterial, in that (a) there was no eviction as alleged by the tenant, and (b) the trial court "was justified in refusing to recognize the counter-claim as it was clearly in excess of the jurisdiction of the District Court, since the tenant demanded damages pursuant thereto in the sum of $2,700."

The district courts are without jurisdiction to entertain a set-off or counterclaim for a sum beyond the statutory maximum, unless the excess is waived. *R. S.* 2:8-40, 2:8-42. Compare *Ward* v. *Hauck,* 87 *N. J. L.* 198; *Kienzle* v. *Gardner,* 73 *Id.* 258. But there may be an amendment of a set-off or counterclaim to bring it within the jurisdiction of the court. *Lester* v. *Karasik,* 12 *N. J. Mis. R.* 195. And the direction of judgment in this court in favor of the plaintiff, on an appeal from a judgment of the District Court in favor of the defendant, was conditioned upon the plaintiff's waiver of the excess over the jurisdictional amount. *Mau* v. *Vulcan Building and Loan Association,* 11 *Id.* 352. If the subject-matter of the counteraction is a claim in excess of the jurisdictional amount, the court "must proceed to try the plaintiff's demand without regard to it." *Kienzle* v. *Gardner, supra.* Where a set-off, counter-claim, discount or recoupment involves a claim in excess of the jurisdictional sum, the district court is required, on the application of the defendant, to order a transfer of the action to the county circuit court, if the defendant, or his duly authorized agent, make affidavit of his belief that the amount of such claim, when established by proof, "will be greater than the sum or value limited for the jurisdiction of such court," and that such counter-action is brought "in good faith and not for the purpose of delay * * *." *R. S.* 2:8-44. But the transference is conditioned upon a finding by a judge of the Circuit Court, after hearing upon notice, that there is "reasonable cause to believe that the set-off, counterclaim or other defensive action is founded on fact," and also that there is "reasonable chance for success" by the claimant thereunder "upon the trial of the same." *R. S.* 2:8-45. *Eder* v. *Hudson County Circuit Court,* 104 *N. J. L.* 260.

But the trial judge did not dismiss or ignore the counterclaim as beyond the jurisdiction of the court. On the contrary, he decided the merits of the issue thereby raised—a determination that may well have the element of conclusiveness, for the pleading was treated by the parties and the judge throughout the trial as a set-off for a sum concededly within the jurisdiction of the court. A verdict was directed and returned, and judgment entered, in favor of the plaintiff for the amount of rent in suit, "and against the defendant and in favor of the plaintiff on the counterclaim." Thus, the judgment presupposes jurisdiction of the subject-matter of the counter-claim; and, if there was no such jurisdiction, it cannot stand as conclusive of the merits of the cause of action thus pleaded. The order of the Circuit Court was predicated upon a finding that the pleading in the counteraction was, in substance and effect, a set-off within the jurisdictional amount. Transference of the action was denied on that ground alone; and, as said, the case was tried on that theory in the District Court. But if, for failure of a formal amendment of this defensive pleading, it be considered that the jurisdictional lack, relating as it does to the subject-matter, is apparent on the record and is not curable by the acquiescence or consent of the parties, the judgment must nevertheless be reversed. A counterclaim not within the jurisdiction of the court should be dismissed or the counterclaimant nonsuited. *Buttoro* v. *Whalen,* 64 *N. J. L.* 461. And a *venire de novo* is the proper course in circumstances such as these, to the end that the issue be determined on the merits by an amendment of the counterclaim to confer jurisdiction or such other course as may serve that purpose. *Ward* v. *Hauck, supra.* Elemental justice so decrees.

Citing the cases of *Sarner* v. *Kantor,* 205 *N. Y. Supp.* 760, and *Butterick Publishing Co.* v. *Fulton & Elm Leasing Co., Inc.,* 229 *N. Y. Supp.* 86, the landlord also urges that the covenant in question "is not made by the landlord but is merely a qualification of the tenant's own covenant not to assign or sublet without the written consent of the lessor." The point is not well taken.

There is a covenant in the words "which consent shall not

be unreasonably withheld." The phrase is not merely restrictive of the character and nature of the tenant's covenant, *i. e.*, that it was not to operate at all if the assent of the landlord be arbitrarily withheld. A peremptory duty was thereby laid upon the landlord to act when his consent was invoked, and to be governed therein by the standard of reason. That was his undertaking by language not fairly susceptible of the contrary interpretation; and he is liable in covenant for a breach thereof. A construction *contra* would reverse the operation of the covenant, assessing its content by the normal usage of the terms. Strictly, a covenant is an agreement by deed to do or not to do a particular act. At common law, the term "covenant" implies an agreement executed under seal. The question is one of intention; technical nicety of expression is not the determinative. The precise form of a covenant or agreement is of no consequence if the intention is reasonably clear. 14 *Am. Jur.* 485, *et seq.* The obvious purpose should not be defeated by a narrow and technical construction of the language used. The arrangement of the covenants is not of controlling significance; the intention is to be gathered from the instrument as a whole. And the terms are to be most strongly construed against the party using them. It is sufficient if they import an agreement to perform, or not to perform, a specified act. Where the language of a deed explicitly reveals a purpose to impose an obligation upon one of the parties thereto, it takes the category of a covenant; and this is so here.

In this view, we have no occasion to consider whether the unreasonable withholding of the landlord's consent to the proposed sublease constituted an eviction, and therefore a defense to the claim for rent. As to this, see *Stewart* v. *Childs Co.*, 86 *N. J. L.* 648; *Whitcomb* v. *Brant, supra*.

The judgment is accordingly reversed, and a *venire de novo* is awarded; costs to abide the event.