CHARLES de PERTY, Plaintiff

v.

GERARD GOTTLIEB, Defendant

Civil No. 364-1964

Municipal Court of the Virgin Islands

Div. of St. Thomas and St. John

March 24, 1965

26

BAILEY & WOOD (WILLIAM W. BAILEY ESQ., of counsel), Charlotte Amalie, St. Thomas, Virgin Islands, *for plaintiff*

BIRCH, MADURO and de JONGH (JOHN L. MADURO, of counsel), Charlotte Amalie, St. Thomas, Virgin Islands, *for defendant*

MICHAEL, *Municipal Judge*

This is a case where the plaintiff, Charles de Perty, has brought an action for specific performance against the defendant, Gerard Gottlieb, his landlord, wherein he claims that the said landlord has unreasonably withheld his consent to a sublease.

27

When the case first came up a default judgment was entered. Sometime after, the defendant moved for a reopening of the case and a stay of execution, which motion was granted. Thereafter, the defendant filed an answer and the matter came on for trial.

At the end of the trial the defendant was granted time within which to file a memorandum of law, the plaintiff having theretofore filed one. A reply memorandum was filed by plaintiff and the matter submitted without oral argument.

The question raised is, whether the defendant has unreasonably withheld consent to the subletting of the premises.

The pertinent provisions of the lease are as follows:

That the lease is to run from November 1, 1961, to May 31, 1963, with option to renew for an additional two (2) years, from June 1, 1963, to May 31, 1965, at a monthly rental of $90;

That the landlord agrees that at the expiration of the lease and option on May 31, 1965, the landlord will grant an additional five year lease at a monthly rental of $125;

That the tenant shall have the right to sublet or assign the premises with the prior written approval of the landlord, which shall not be unreasonably withheld;

That in event of any assignment or sublease, the tenant shall continue to be responsible to the landlord for the compliance with the performance of their obligations under the lease;

That the tenant shall have the right to make repairs, alterations and improvements to the leased premises, provided no structural changes shall be made without the prior written approval of the landlord;

That the tenant shall have the right to remove all such improvement if the same can be effected without substantial injury to the leased premises;

That the tenant shall have the right to transfer the lease to a corporation or partnership which may be formed by them in the future, and which they shall jointly own at least the controlling amount of stock or ownership, provided the tenant, in the event of such transfer, shall continue to be responsible to the

landlord for compliance with and performance of the obligations under the lease; and,

That tenant is obliged to observe all fire, sanitary and municipal or insular regulations affecting the premises at the date of the lease and shall be responsible for such observance.

The plaintiff by his complaint seeks to obtain consent of defendant to a sublease which he has negotiated with two co-partners with whom he was doing business in the same premises under the name of the "Happy Mongoose".

Defendant refuses to grant consent on the following grounds, as stated by him on the witness stand:

1. That before the tenant made improvements to the premises he promised to have his lawyer write to him about it, which the lawyer never did;

2. That the new electrical system installed by plaintiff has jeopardized the safety of the building, on which he has limited insurance;

3. That plaintiff made structural change by putting in a window or an exhaust fan for the kitchen without his consent, and that the grease, which is blown into a removable container located outside the building at the entrance of the stairway where other tenants have to pass, drips from said container and may cause damage if someone should slip, and for which he would be responsible;

4. That he had not seen the sublease; and,

5. That plaintiff would realize an unreasonably high profit on the sublease.

It appears from the evidence that plaintiff first conducted a laundry at the premises, but sometime after converted it into a restaurant, along with two other partners. The lease provides, as indicated above, that the tenant shall have the right to transfer the lease to a corporation or partnership which may be formed in the future. This business was in operation by plaintiff and his co-partners for some months before plaintiff sought permission to sublet the premises to the said partners.

■ As to the first and second objections, those of not informing defendant of the improvements he intended to make and of installing a new electrical system, it is the opinion of the court that plaintiff was not required to do so under the provisions of the lease, which states in part that "the tenant shall have the right to make repairs, alterations and improvements to the leased premises, *provided no structural changes shall be made without the prior written approval of the landlord.*" (Emphasis supplied.) It is evident by this provision that only if structural changes were to be made that prior written approval had to be obtained. The improvements made by the tenant were not structural changes which required the written approval of the defendant.

■ "A 'structural change', within rule that tenant, who has agreed to comply with regulations and requirements of city and state applicable to premises, is not required to make structural changes, is one that affects a vital and substantial portion of the premises, that changes its characteristic appearance, the fundamental purpose of its erection, the uses contemplated, or one that changes the very realty itself, is extraordinary in scope and effect, or unusual in expenditure." Pross v. Excelsior Cleaning & Dyeing Co., 179 N.Y.S. 176, 179; Robert Hawthorne, Inc. v. Liberty Mut. Ins. Co. D.C. Pa., 150 F.Supp. 829, 834.

■ ■ There can be no doubt, therefore, that neither the change of the business from a laundry to a restaurant, nor the installation of the electric system, which did not require any change in the building itself, was a structural change. Although the defendant claims that the electrical installation jeopardizes the safety of the building, he has not shown that the plaintiff violated any municipal regulation affecting the premises. Moreover, since the lease did not specify the nature of business to be conducted in the premises, there was no violation when plaintiff and his partners changed the type of business from a laundry to a restaurant.

Commenting on the point of fire hazard, the court in the

30

case of Durante v. Consumers Filling Station Co. of Cheyenne, 257 P. 2d 347, 357, had this to say:

"It is insisted that the lease be forfeited because respondent connected an improperly vented stove in the building, thereby increasing appellant's insurance costs twenty percent due to greater fire hazard. But counsel does not make clear to us how this constitutes a remodeling or material alteration, nor is any authority to that effect cited. The appellant may—and probably should—have some protection against having his property unduly subjected to additional fire hazard and, likewise, be saved from the increased cost of insurance, but he is not entitled to a forfeiture of the lease, except for violation of the covenants and the agreements of the lease, which by its terms are made a grounds for such forfeiture."

■ Another point worth mentioning is, as there was no objection on the part of defendant when plaintiff converted or changed the laundry into a restaurant, which change took place months before approval of a sublease was sought, the defendant would be now estopped to enforce such a limitation if any such limitation did exist. Ibid.

■■ With respect to the third objection, that the installing of an exhaust fan and the dropping of grease which may be dangerous to persons using the steps outside the leased premises, it is the opinion of the court that said installation, which necessitated an aperture through the concrete block wall about fourteen (14) inches square, was not a "structural change", contemplated by the meaning of the term. At the expiration of the term of the lease this opening could be closed without injury to the property and the grease container removed. As was stated in Wall Nut Products, Inc. v. Radar Central Corp., 244 N.Y.S. 2d 827, "a structural change involved within lease provision forbidding such change without lessor's consent, is one that would put uses of leased buildings beyond that which they would ordinarily be put and would result in some change and appearance of building."

In connection with the dropping of grease on the steps,

31

the court viewed the premises and found that this was caused by the leaking of the grease container, which could be easily remedied. Moreover, defendant's fear of liability resulting from injury caused by the dripping of grease may be allayed by the fact that the sublease provides for liability insurance in the minimum coverage of $100,000, which is apparently more than the value of the premises. "To forfeit the plaintiff's rights under the lease on such meager ground, would offend good conscience." Durante v. Consumers Filling Station Co. of Cheyenne, Ibid.

Defendant's fourth objection of not seeing the sublease is not well taken, as a letter admitted in evidence dated April 28, 1964, Plaintiff's Exhibit No. IV, discloses that his then attorney wrote to plaintiff's attorney to the effect that he had studied the draft of the sublease and had advised his client, the defendant, on the matter, but that he had not yet given him his decision. Not receiving any answer to plaintiff's request, plaintiff filed this action on July 9, 1964, over two months after.

Defendant's fifth objection to the high profit plaintiff would realize by the sublease is irrelevant. If the defendant wished, in the event of a sublease, to obtain any greater financial benefit than that provided in the lease, he could have so provided. Not having done so he cannot now complain. Anent this matter, however, consideration must be given to the fact that the sublease is of premises in which there is a going business which was operated by plaintiff and his partners and to which defendant has not contributed.

After examining paragraphs 5 and 7 of the lease between the plaintiff and the defendant, it does not appear to the court that defendant would be in any worse position by consenting to the sublease, inasmuch as by their provisions the plaintiff-tenant is at all times responsible to the defend-

ant-landlord, whether by sublease, assignment or transfer of the lease to a corporation or partnership.

■ Interpreting the words, "which consent shall not be unreasonably withheld", the Supreme Court of New Jersey in the case of Broad & Branford Place Corp. v. J. J. Hockenjos Co., 39 A.2d 80, stated:

"There is a covenant in the words 'which consent shall not be unreasonably withheld'. The phrase is not merely restrictive of the character and nature of the tenant's covenant, i.e. that it was not to operate at all if the assent of the landlord be arbitrarily withheld. A peremptory duty was thereby laid upon the landlord to act when his consent was invoked, and to be governed therein by the standard of reason. That was his undertaking by language not fairly susceptible of the contrary interpretation; and he is liable in covenant for breach thereof. A construction contra would reverse the operation of the covenant, assessing its content by the normal usage of the terms. Strictly, a covenant is an agreement by deed to do or not to do a particular act . . . .

"Arbitrary considerations of personal taste, sensibility, or convenience do not constitute the criteria of the landlord's duty under an agreement such as this. Personal satisfaction is not the sole determining factor. Mere whim or caprice, however honest the judgment, will not suffice . . . . The standard is the action of a reasonable man in the landlord's position. What would a reasonable man do in the like circumstances? The term 'reasonable' is relative and not readily definable. As here used, it connotes action according to the dictates of reason—such as is just, fair and suitable in the circumstances. *And questions of reasonableness of conduct and good faith are ordinarily for the judgment of the triers of the facts . . . .*" Ibid. (Emphasis supplied.)

■ As the defendant has not shown to the court any valid standard of reason or cause for withholding consent to the sublease, which is for the purpose of carrying on the same business which was carried on by plaintiff, and which was known to defendant, it is the opinion of the court that the action of the landlord in withholding approval has been arbitrary.

Findings of Fact and Judgment in accordance with this

opinion will be entered, giving defendant ten (10) days after entry to make and deliver to plaintiff written consent to a sublease to his former partners, Frank Del Rocco and Joseph Parra, failing which the judgment shall stand in lieu thereof. However, no damage will be assessed against the defendant.