DECISION
This matter is before the Court for decision following a bench trial. The Plaintiff, Scott Davis (Davis or Guarantor), seeks a judgment against Defendant, JT Building Development, LLC (JT Building or Landlord or Lessor), for damages incurred as a result of the Landlord's allegedly unreasonable withholding of consent to the assignment of a Commercial Lease Agreement (Lease) between JT Building and Davco Management, Inc. d/b/a Quiznos Sub (Davco or Lessee). Davis additionally seeks attorney's fees pursuant to G.L. 1956 § 9-1-45 and requests that the Court strike the assignment provision of the Lease and relieve him of his personal liability under the Guaranty executed in conjunction with the Lease. JT Building seeks a judgment finding that: (1) it reasonably withheld consent to Lessee's assignment request; (2) Davco[1] is in default of the Lease for having failed to obtain consent prior to the stock sale; and (3) Davis and Davco remain primarily liable under the terms of the Lease and Guaranty. Defendant also seeks attorney's fees pursuant to § 9-1-45, as well as costs and expenses. *Page 2 
 I Facts and Travel
Davis was the President and a stockholder of Davco, a Rhode Island corporation. JT Building is a Massachusetts limited liability corporation and the owner of property located at 448 Newport Avenue, Pawtucket, Rhode Island (Premises).
After acquiring a Quiznos Sub franchise, Davis began negotiations with Jeff Dufficy (Dufficy), manager of JT Building, to lease the Premises for a Quiznos Sub store. During these negotiations, Dufficy received and reviewed Davis' personal financial statement.[2]See Pl.'s Ex. 1. The parties also negotiated the terms of a form lease provided by Quiznos Sub and revised numerous provisions. (Pl.'s Ex. 2.) In particular, paragraph 12, entitled "Assignment and Subletting," was heavily discussed and scrutinized by the parties.Id. Additionally, Davis agreed to execute a personal guaranty of Davco's obligations under the Lease, the consideration for which was paid for by Davco. Id. at 22.
On December 9, 2004, Davis on behalf of Davco and Dufficy on behalf of JT Building executed the Lease. Id. Under its terms, Davco agreed to lease the Premises from JT Building for a ten-year period for the purpose of operating a Quiznos Sub. Id. JT Building agreed to improve the Premises in accordance with the specifications of the "Standard Quiznos Sub Shell."Id. at 18.
With respect to assignment and subletting the Lease stated:
 "a) Tenant shall not either voluntarily, or by operation of law, assign, transfer, mortgage, pledge, hypothecate or encumber this Lease or any interest therein, and shall not sublet the Premises or any part thereof, or any right or privilege appurtenant thereto, or allow any other person (the employees, agents, servants and invitees of Tenant excepted) to occupy or use the Premises, or any *Page 3 
portion thereof, without first obtaining the written consent of Landlord, which consent shall not be unreasonably withheld. . . .
 "Consent to any such assignment or subletting shall in no way relieve [Davco] of any liability under this Lease. Any such assignment or subletting without such consent shall be void, and shall, at the option of Landlord, constitute a default under the terms of this Lease. . . .
 "b) Notwithstanding the foregoing, [Davco] shall have the right to assign this Lease or sublet the Premises, without charge and without Landlord's consent being required to Quizno's Franchising LLC ("QF"), or its parent, subsidiaries or affiliates (QF, its parent, subsidiaries and affiliates are each referred to herein as a "QF Entity" or "Franchisor") or to a duly authorized franchisee of Franchisor[;] however, if the assignment is to such a duly authorized franchisee, the Landlord's reasonable consent shall be required, and such consent may be based upon, without limitation, the Landlord's reasonable satisfaction with the financial statements and personal guaranty of such proposed franchisee. In the event of an assignment to a QF Entity, the QF Entity shall have the right to reassign the Lease, without charge and with Landlord's reasonable consent and approval of the financial condition and personal guaranty of the proposed assignee, to a duly authorized franchisee of Franchisor and to thereupon be released from any further liability under the Lease. . . ." Id. ¶ 12.
In conjunction with the Lease, Davis signed an irrevocable and continuing personal guaranty — the consideration for which was paid for by Davco — securing Davco's obligations under the Lease.Id. at 21. The Guaranty provides in pertinent part:
 "In consideration of the sum of One ($1.00) Dollar and other valuable consideration to it in hand paid by [Davco] . . . and in further consideration of [Davis'] personal, business and/or financial interest in [Davco], and in further consideration of the execution and delivery of the Lease to which this instrument is attached, and to induce [JT Building] to execute and deliver that lease, being between [JT Building], as Lessor, and [Davco], as Lessee, dated as of even date with this Guaranty, covering the [Premises], irrevocably guarantees to [JT Building], its successor and assigns, the full and due performance by [Davco], and by its successor and assigns, of all the terms, obligations, covenants and agreements under that Lease, and each of them, on the part of [Davco], its successors and assigns to be observed or performed, *Page 4 
and, without limiting the foregoing, the full and punctual payment by [Davco] and its successors and assigns of all Rent, Additional Rent, and other sums of money, as and when they become due and payable by [Davco], its successors and assigns, as provided in that Lease, during the full term of that Lease. . . ." Id.
In addition to guaranteeing the full performance of all terms, obligations, covenants, and agreements under the Lease, the Guaranty provides that all agreements contained in the Guaranty are binding upon the Guarantor, its successors, and assigns and for Davis' continuing liability in the event of an assignment of the Lease.Id. The Guaranty states in pertinent part:
 "5. All of the foregoing agreements of [Davis] contained in this Guaranty, and each of them, shall be binding upon [Davis, his] successors and assigns, and shall inure to the benefit of the Landlord, its successors and assigns.
 "6. Anything to the contrary above contained notwithstanding, it is agreed that the liability of the Guarantor, after an assignment of the Lease, when, and only when, the assignment is other than to (a) an associate or affiliate company of [Davco] or to a company with which [Davco] has been merged or consolidated or (b) any company with which the Lessor may be merged or consolidated or any associate or subsidiary thereof, shall be limited to, but at the same time shall be as coextensive as, the liability of the Lessee named in the Lease, both as to the Lessee's liability in respect to the period of the term up to the assignment, as well as to the continuing liability of the assignor from and after the date of that assignment.
 "Nothing in this Guaranty is intended to vary or digress from the provisions of the Lease governing assignments or to dilute the restrictions as to assignment stated in the Lease." Id. at 22.
In effect, these provisions contemplated that under certain circumstances, should Davco assign the Lease to a third party, Davis would remain personally liable for Davco's continuing liability as assignor. Id.
Subsequently, Davis and his wife decided they no longer wanted to own or operate the Quiznos Sub franchise. Although they never directly listed the franchise for sale, Davis received *Page 5 
several offers from interested buyers. Ultimately, Davis decided to sell the assets of his Quiznos Sub franchise to Gene and Hannah Choi (collectively, the Chois). At the time, the Chois were authorized Quiznos Sub franchisees and were seeking a location in which to open a Quiznos Sub. Hannah Choi had a background in food services, a MBA degree, and also operated a business out of her home. Gene Choi had a Masters Degree in Marketing and was employed as an engineering manager. (Def.'s Ex. E.)
On April 8, 2007, the Chois, as ChoiS Management, Inc., entered into an Asset Purchase Agreement (Asset Agreement) to purchase the assets of the Quiznos Sub franchise owned by Davco for $287,600. (Pl.'s Ex. 7.) As part of the Asset Agreement, the Chois were to purchase the merchandise, furniture, fixtures, equipment, goodwill and all other assets related to the Quiznos Sub located at the Premises. Id. Additionally, the Asset Agreement provided that the sale was contingent on the assumption and assignment of the Lease of the Premises by ChoiS Management, Inc.[3] Id.
On April 9, 2007, Davis notified Dufficy of his intention to sell the Quiznos Sub and requested that the remainder of the Lease be assigned to the Chois' entity.[4] See Pl.'s Ex. 4.
In response, by a letter dated April 12, 2007, the Landlord, through its counsel, Stephen J. McLaughlin (McLaughlin), requested the Chois' personal financial statements and authorization to obtain their credit reports. (Pl.'s Ex. 5.) In the letter, McLaughlin stated that the "financial condition and creditworthiness of the [Chois was] of crucial concern to the Landlord" and highlighted that the Lease specifically provided that `[c]onsent to any such assignment or *Page 6 
subletting shall in no way relieve Tenant of any liability under this Lease.' Id. McLaughlin reiterated that Davis, as "a personal guarantor of [Davco's] obligations under the Lease, [would] remain personally liable under the Lease and [would] remain accountable in the event of default by such assignee." Id.
On May 17, 2007, the Landlord received the Chois' SBA Form 413 Personal Financial Statement (Financial Statement).See Pl.'s Ex. 6. The Chois' Financial Statement reflected a net worth of $421,125. Id. Among their assets, the Chois had (1) a personal residence valued at $336,221; (2) $48,000 in savings; (3) $62,000 in a retirement account; (4) about $28,000 in stocks and bonds; and (5) a household income of approximately $96,000. Id. Among the liabilities indicated by the Chois' Financial Statement was a first mortgage in the sum of $128,000 on their residence.[5] Id.
After initially reviewing the Chois' Financial Statement, on May 27, 2007, McLaughlin sent Davis a letter expressing the Landlord's concerns with the Chois' financial strength and their ability to meet the financial requirements of the Lease. (Pl.'s Ex. 11.) However, despite these concerns, McLaughlin indicated that the Landlord remained open to the possibility of approving an assignment to the Chois. Id.
On June 22, 2007, Davis sent Dufficy an email in which he challenged his continuing liability as Guarantor of the Lease obligations. Davis wrote:
 "I cannot put myself in a position where I am guaranteeing a lease payment for owners I don't even know. I believe very strongly *Page 7 
that the court will interpret our lease in the same manner I have and know that Quiznos has very significant legal experience with this lease that further reinforces my and my attorney's opinion that I am not obligated to you in any way as long as I lease to a qualified Quiznos franchise." See Def.'s Ex. D.
On June 27, 2007, the Landlord received the remainder of the Chois' financial records.[6] (Pl.'s Ex. 11.) After reviewing these documents, on June 29, 2007, McLaughlin sent Davis a letter reiterating that under the Lease, the "Landlord's consent to any proposed assignment may be conditioned upon the Landlord's reasonable satisfaction with the proposed assignee's financial statements and personal guaranty." Id. McLaughlin noted that upon review of the Chois' Financial Statement and Stearns Bank commitment letter, the Landlord believed their financial strength still appeared weak and the equity in their home appeared fully encumbered and unreachable in the event they defaulted under the Lease. Id. Further, in light of their weak financial condition, the Landlord had concluded that personal guarantees by the Chois would provide insufficient financial security because they would not be "backed by any reachable financial assets."[7]Id. As a result, McLaughlin stated that "the Landlord [was] not reasonably satisfied with the financial statements and personal guaranty of the proposed assignee[,]" and "without other adequate security the Landlord [would not] consent to the proposed assignment." Id.
In light of the Landlord's refusal to consent, Davis and the Chois executed an Amendment to Asset Purchase Agreement (Amendment) on August 3, 2007, altering the original asset sale to a stock sale. (Pl.'s Exs. 8 9; Def.'s Exs. J K.) By the terms of this Amendment, the Chois purchased all of Davco's stock for $287,600 and subsequently took *Page 8 
ownership of the corporation. Id. As a result of the stock sale, Davco remains the Tenant under the Lease. See Pl.'s Ex. 2.
 II Standard of Review
The court decides non-jury trials pursuant to its power under Rule 52, which provides that "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon." Super. R. Civ. P. 52(a). Under Rule 52, "the trial justice sits as a trier of fact as well as law." Parella v. Montalbano,899 A.2d 1226, 1239 (R.I. 2006) (quoting Hood v. Hawkins,478 A.2d 181, 184 (R.I. 1984)). As a result, the trial justice "weighs and considers the evidence, passes upon credibility of the witnesses, and draws proper inferences" from the evidence presented.Id. Furthermore, an extensive analysis and discussion of the evidence and testimony is not required to comply with the mandates of Rule 52; rather "brief findings and conclusions are sufficient if they address and resolve the controlling and essential factual issues in the case." Hilley v. Lawrence,972 A.2d 643, 651 (R.I. 2009) (quoting Donnelly v. Cowsill,716 A.2d 742, 747 (R.I. 1998) (citation omitted)).
 III Discussion A Davis' Guaranty
As a threshold matter, the Court considers the status of Davis' personal guaranty of Davco's Lease obligations. Davis contends that he should be released from personal liability under the Guaranty because an assignment or stock sale effects a change in the principal-debtor relationship and changes the nature of his obligation. See Pl.'s Post Trial Mem. 18. Davis *Page 9 
believes that it would be unfair to require him to remain personally liable for the actions of any future tenant — be it the Chois or some other third party — whose actions would be outside of his control. Id. at 19. Conversely, JT Building maintains that regardless of the proposed assignment or executed stock sale, Davis' Guaranty is irrevocable, continuing, and clearly contemplated his continuing liability in the event of an assignment. (Def.'s Post Trial Mem. 20.) Furthermore, whereas Davco remains a party to and liable for the Lease despite the stock sale, JT Building contends that Davis, as Guarantor of Davco's Lease obligations, similarly remains liable. Id.
 1 The Proposed Assignment
It is well settled that courts are to strictly construe the scope of a guarantor's liability according to the terms of a guaranty.Merrimack Valley Nat. Bank v. Baird,372 Mass. 721, 723, 363 N.E.2d 688, 690 (1977). Furthermore, "[w]hen the words of a [guaranty] are clear[,] they alone determine the meaning of the [guaranty]." Id. It is only when a term of the guaranty is ambiguous, that a court should construe the parties' intent from the circumstances surrounding its creation.Id.
Here, under the terms of the Guaranty, Davis irrevocably guaranteed the full and due performance of "all the terms, obligations, covenants and agreements" under the Lease, by Davco, its successors, and assigns. (Pl.'s Ex. 2 at 21.) Moreover, paragraph 6 of the Guaranty explicitly states:
 "Anything to the contrary above contained notwithstanding, it is agreed that [Davis' liability], after an assignment of the Lease, when, and only when, the assignment is other than to (a) an associate or affiliate company of [Davco] or to a company with which [Davco] has been merged or consolidated or (b) any company with which the [JT Building] may be merged or consolidated or any associate or subsidiary thereof, shall be limited to, but at the same item shall be as coextensive as, the liability of *Page 10 the Lessee named in the Lease, both as to the Lessee's liability in respect to the period of the term up to the assignment, as well as to the continuing liability of the assignor from and after the date of that assignment." Id. at 22 (emphasis added).
Under this provision, in the event that Davco assigned the Lease to a party that was neither an "associate or affiliate company of Davco" nor "a company with which Davco had been merged or consolidated," Davis' liability, as Guarantor, was continuing and "coextensive" with that of Davco.[8] Therefore, given that ChoiS Management, Inc. was to assume the Lease under the terms of the Asset Agreement, and was not an associate, affiliate, or company with which Davco had been consolidated or merged, the Court finds that under the Guaranty, Davis would have remained liable for Davco's continuing liability.
In addition to the Guaranty, the Lease also contemplates the possibility of an assignment and the continuing liability of both Davco and Davis in the event one occurred. See NationalSuper Mkts., Inc. v. KMSK, Inc.,940 S.W.2d 47, 49 (Mo. App. 1997) (stating that in addition to the terms of a guaranty, the terms of a lease agreement may support a claim that a guarantor remain liable after assignment);Weinsklar Realty Co. v. Dooley,200 Wis. 412, 414, 228 N.W. 515, 517 (1930) (stating that guarantors are bound by lease provisions contemplating assignment with the Landlord's consent and are not discharged should an assignment occur). Not only does the Lease specifically set forth the procedures and obligations in the event of an assignment, [9] but *Page 11 
the Lease also explicitly states that "[c]onsent to any such assignment or subletting shall in no way relieve [Davco] of any liability under this Lease." (Pl.'s Ex. 2 ¶ 12.) As a result, had Davco assigned the Lease, the terms of the Lease obligated Davco to remain liable for an assignee's obligations, and therefore, Davis would similarly have remained personally liable for Davco.
In light of the Lease and Guaranty provisions, the Court rejects Davis' assertions that the parties had not contemplated his continuing liability in the event of an assignment and that it would be unfair to hold him personally liable for the actions of assignees out of his control. KMSK, Inc., 940 S.W.2d at 50 (holding that the guarantor remained liable where nothing in the guaranty purported to restrict or condition his liability to circumstances in which he could control assignee's performance); Barr v. CountryMotor Car Grp., Inc.,221 A.D.2d 1003, 1004, 635 N.Y.S.2d 370, 371 (4th Dep't 1995) (finding that guarantors were not released from their obligations by tenant's assignment of lease to a third party, as guaranty expressly provided that it would include and extend to any modifications of the underlying agreements); Claude S. Corp. v. Henry's Drive-In,Inc.,51 Ill. App.2d 289, 301-02, 201 N.E.2d 127, 133 (Ill. App. 1964) (stating that a guarantor should not be discharged where the essentials of the original contract are the same and the performance required of the guarantor is not materially different). Where, as here, Davis agreed to guaranty all of the terms, obligations, covenants and agreements of Davco, its successors, and assigns — and the Lease specifically provided that consent to an assignment would not relieve Davco of any liability — the Court finds that an assignment to ChoiS Management, Inc., would not have changed or altered Davis' obligations and he would have remained personally liable under the Guaranty. *Page 12 
 2 The Stock Sale
Davis further contends that he should be released from liability under the Guaranty because the stock sale to the Chois materially altered his obligations as Guarantor. (Pl.'s Post Trial Mem. 18.) In contrast, JT Building argues that despite the stock sale, because all the parties to the Lease have remained the same, neither Davis' obligations nor his level of risk as Guarantor have changed. (Def.'s Post Trial Mem. 20.)
As a result of the stock sale, Davis and the Chois avoided having to obtain the Landlord's consent to a Lease assignment. In lieu of an asset sale and an assignment of the Lease, under the terms of the Amendment, the Chois became the owners and sole shareholders of Davco. Consequently, having abandoned the assignment, all parties to the Lease, including Davis as Guarantor, remain unchanged.
It is well settled in Rhode Island, "that a material alteration in the original contract by the parties thereto without the consent of the surety or guarantor releases such surety or guarantor."Shepard Land Co. v. Banigan,36 R.I. 1, 25, 87 A. 531, 540-41 (R.I. 1913). This rule protects a guarantor from alterations which increase the guarantor's risk over that which was assumed in the original agreement. DevereuxProps., Inc. v. BBM W, Inc.,114 N.C. App. 621, 624, 442 S.E.2d 555, 556-57 (1994). However, these circumstances are not currently before the Court. Where, as here, Davis not only consented to the stock sale, but facilitated it and was a party to the transaction, he may not now claim that his obligations have been materially altered and may not escape personal liability. Bank of Commerce v. Riverside Trails,52 Ill. App.3d 616, 620, 367 N.E.2d 993, 997 (Ill. App. 1977) (stating that the law of guaranty is not designed to protect a guarantor who after authorizing and benefiting from the modifications now claims them as *Page 13 
grounds for relief from liability); Regal Shoe Shops v.Kleinman, 361 So.2d 765, 766 (Fla. 1978) (stating that a guarantor may not assert as grounds to avoid guaranty obligations, changes made with his knowledge and by him as a corporate officer) (applying New York law).
Further, the Court finds that Davis has assumed no more risk than was originally contemplated by the Lease.Loving Assocs. v. Carothers,619 N.W.2d 782, 789 (Minn. App. 2000) (stating that a factor in determining whether the guarantor should be released from liability is whether there has been a material increase in the risk assumed by the guarantor at the time he signed the guaranty); Skrabalak v.Rock, 208 A.D.2d 1100, 1102, 617 N.Y.S.2d 912, 914 (3d Dep't 1994) (holding that the guarantor remained liable despite an assignment where there was little change in the degree of risk assumed by the guarantor and no change in the nature of the business activities pertinent to the guarantee). The Lease and Guaranty both provide for the possibility of an assignment to a third party and for Davco and Davis' continuing liability in the event such an assignment to a third party occurred. See Pl.'s Ex. 2.
The fact that the transaction between Davis and the Chois was completed through a stock sale and not an assignment does not alter the Court's determination. Davis agreed to be personally liable for Davco's Lease obligations, and currently, Davco remains a party to the Lease. At the time he executed the Lease and Guaranty, Davis knew — and the documents clearly provided — that he would be personally liable for a third party by way of a future assignment or transaction. As a result, the Court finds that the stock sale did not alter the nature of Davis' performance or risk under the Guaranty; and he remains personally liable. *Page 14 
 B The Lease
Under the terms of the Lease, Davco was prohibited from
 "voluntarily, or by operation of law, assign[ing], transfer[ing], mortgag[ing], pledg[ing], hypothecate[ing] or encumber[ing]" the Lease "or allow[ing] any other person (the employees, agents, servants and invitees of Tenant excepted) to occupy or use the Premises, or any portion thereof, without first obtaining the written consent of Landlord, which consent shall not be unreasonably withheld any interest therein." (Pl.'s Ex. 2 ¶ 12.)
However, the Lease provides for an exception to the consent requirement when an assignment is made to Quizno's Franchising LLC or its parent, subsidiaries, or affiliates.[10] Id. In the event an assignment is made to a "duly authorized franchisee, the Landlord's reasonable consent shall be required, and such consent may be based upon, without limitation, the Landlord's reasonable satisfaction with the financial statements and personal guaranty of such proposed franchisee." Id.
Accordingly, where, as here, Davis proposed an assignment of the Lease to a duly authorized franchisee — the Chois as ChoiS Management, Inc. — the Lease explicitly required Davis to obtain the Landlord's consent which could be withheld until Dufficy was reasonably satisfied with the Chois' financial stability and personal guaranty.
 1 Landlord's Covenant
As a threshold matter, the Court addresses the issue of whether language requiring a landlord's consent to "not be unreasonably withheld" constitutes a covenant or is merely a qualification to a tenant's covenant not to assign or sublet without the landlord's consent. While Rhode Island courts have not announced a clear standard by which to construe such lease *Page 15 
provisions, in general, courts have concluded that the language prohibiting the unreasonable withholding of consent by a landlord amounts to a covenant. See Broad Branford PlaceCorp. v. J. J. Hockenjos Co.,132 N.J.L. 229, 235-36, 39 A.2d 80, 84 (N.J. 1944) (holding that "there is a covenant in the words `which consent shall not be unreasonably withheld'"); Pakwood Indus. V. John GaltAssoc., 219 Ga. App. 527, 529, 466 S.E.2d 226, 228 (1995) (citingStern's Gallery, Etc. v. Corp. Prop. Investors,176 Ga. App. 586, 337 S.E.2d 29 (1985)) (affirming that a lease clause providing that a lessor cannot unreasonably withhold consent to an assignment is a covenant upon the landlord); seealso 54 A.L.R. 3d 679 (1973).
To arrive at this conclusion, courts have applied and incorporated principles of contract law to leases. Ringwood Assocs.,Ltd. v. Jack's of Route 23,153 N.J. Super. 294, 306, 379 A.2d 508, 514 (N.J. Super. Ct. 1977). In fact, modern commercial lease cases have held that because under these qualified provisions a "peremptory duty [is] laid upon the landlord to act when his consent [is] invoked, and to be governed therein by the standard of reason," a landlord can be "liable in covenant for a breach thereof." Broad Branford,32 N.J.L. at 236, 39 A.2d at 84; see also RockCnty. Sav. Trust Co. of Janesville v. Yost's, Inc.,36 Wis.2d 360, 364-65, 153 N.W.2d 594, 596-97 (1967) (stating that an action for damages may be grounded in a breach of lease provision preventing lessor from unreasonably withholding consent to an assignment); Singer Sewing Mach. Co. v. Eastway PlazaInc., 5 Misc.2d 509, 510-11 (N.Y. 1957) (stating that there appears to be no matter of policy preventing the incorporation of general rules of contract to leases); Arlu Assocs.,Inc. v. Rosner, 14 A.D.2d 272, 220 N.Y.S.2d 288 (1st Dep't 1961).
Therefore, where, as here, the language of the Lease explicitly prevents the Landlord from unreasonably withholding consent, this Court will construe it as a covenant and proceed accordingly.Broad Branford, 32 N.J.L. at 236, 39 A.2d at 84;Ringwood, 153 N.J. Super. at 309, *Page 16 379 A.2d at 516 (stating that because a lease is like any other written contract, when either party fails to perform a covenant, the injured party may bring an action for damages for breach of contract); see Restatement (Second)Property, § 15.2 cmt. h (1977) (stating that a provision in a lease that consent to an assignment will not be unreasonably withheld is a promise and upon its breach the other party will be entitled to all the remedies available for a breach of a promise).
 2 Reasonableness of Landlord's Refusal to Consent
Davis contends that the Landlord unreasonably withheld consent to Davco's request to assign the Lease to the Chois' entity. (Pl.'s Post Trial Mem. 12-27.) Conversely, JT Building claims that the decision to withhold consent was both reasonable and prudent in light of the Lease terms and after reviewing the Chois' financial statements. (Def.'s Post Trial Mem. 12, 15.)
Davis, as the party challenging the Landlord's action, has the burden of proving that the Landlord unreasonably withheld consent.Broad Branford, 132 N.J.L. at 231, 39 A.2d at 82;Funk v. Funk,102 Idaho 521, 524-25, 633 P.2d 586, 589-90 (1981) (stating that burden of proving that consent was unreasonably withheld is on the party challenging that conduct). Davis also has the burden of providing the Landlord with the information necessary for him to determine whether to consent to the assignment. D'Oca v.Delfakis,130 Ariz. 470, 472, 636 P.2d 1252, 1254 (Ariz. App. 1981) (stating that the landlord has the right to obtain information concerning the prospective assignees financial stability);Vranas Assocs., Inc. v. Family Pride Finer Foods, Inc.,147 Ill.App.3d 995, 1003-04, 498 N.E.2d 333, 339 (Ill. App. 1986) (stating that a lessor is not unreasonable for requesting further information about a proposed assignee). *Page 17 
In determining whether a landlord unreasonably withheld consent, a court must decide whether the landlord was acting in accordance with a reasonable commercial standard. First Am. Bank v. Woods,781 S.W.2d 588, 590 (Tenn. App. 1989). More specifically, courts focus on whether the landlord's conduct was that of "`a reasonably prudent person . . . exercising reasonable commercial responsibility.'" Id. (citing Brigham YoungUniv. v. Seman, 206 Mont. 440, 447, 672 P.2d 15, 18 (1983));see also Broad Branford,132 N.J.L. at 231, 39 A.2d at 82 (stating that a landlord's action must be judged against that of a reasonable man in the landlord's position); Restatement (Second)Property, § 15.2 Reporter's Note, item 7 (1977).
A landlord may not rely on "arbitrary considerations of personal taste, sensibility, or convenience." Broad Branford,132 N.J.L. at 231, 39 A.2d at 82 (stating that personal satisfaction of the landlord is not the sole determining factor in consenting to assignment); American Book Co. v. Yeshiva Univ. Dev. Found.,Inc., 59 Misc.2d 31, 34-35 (1969) (noting that courts have disapproved of a landlord's use of subjective criteria in withholding consent to assignment). In fact, no public policy is served by a court's upholding a landlord's arbitrary refusal to consent based on whim or caprice. Funk,102 Idaho at 524, 633 P.2d at 589. Moreover, "consent is not to be withheld unless the prospective tenant is unacceptable using the same standards applied in the acceptance of the original tenant."Boss Barbara, Inc. v. Newbill,638 P.2d 1084, 1086 (N.M. 1982).
In evaluating the reasonableness of a landlord's conduct, courts have relied on the following objective criteria: (1) the financial responsibility of the proposed assignee; (2) the original tenant's failure to indicate a willingness to remain obligated on the lease; (3) the suitability of the tenant for the particular building; (4) the legality of the proposed use and need *Page 18 
for alteration of the space; and (5) the nature of the existing and proposed occupancy.[11] American Book, 59 Misc.2d at 33; 49 Am. Jur. 2d Landlord Tenant § 942 (2010). The primary factor courts consider is the financial ability of the proposed tenant to perform under the lease, particularly the payment of rent. Pakwood, 219 Ga. App. at 529, 466 S.E.2d at 228;Jack Frost Sales, Inc. v. Harris Trust Sav. Bank,104 Ill. App.3d 933, 946, 433 N.E.2d 941, 950 (Ill. App. 1982) (stating that the landlord's refusal to consent is not unreasonable where a proposed assignee is insolvent or of dubious financial responsibility). Essentially, a court must construe the reasonableness of the landlord's "perception that the proposed tenant presented financial or other risks." Woods,781 S.W.2d at 590-91 (citing Fahrenwald v. LaBonte,103 Idaho 751, 756, 653 P.2d 806, 811 (1982)).
Here, the Landlord withheld consent after Davis refused to remain liable under the Guaranty and after determining that the Chois' financial strength was weak in light of their Financial Statement, credit reports, 2003-2006 tax returns, and the April 13, 2007 Stearns Bank Commitment. (Pl.'s Exs. 6 11; Def.'s Ex. D.) Specifically, Dufficy believed that because the equity in the Chois' home would be encumbered by three mortgages, it would be unreachable in the event they defaulted under the Lease. (Pl.'s Ex. 11.) Dufficy also determined that personal guarantees by the Chois would be insufficient because they would not be "backed by any reachable financial assets" and that Davis' proposal to allow the existing security deposits to remain in escrow failed to provide any meaningful financial security. Id. *Page 19 
The Landlord now urges the Court to find these determinations reasonable in light of Woods, 781 S.W.2d at 592 (holding that the landlord's decision to withhold consent was not unreasonable after determining that the proposed assignee's financial condition was uncertain) and Pakwood,219 Ga. App. at 529, 466 S.E.2d at 228 (finding that landlord was not unreasonable in withholding consent in light of his concerns regarding the parties' ability to perform under the lease). However, the Landlord's reliance on these cases is misplaced.
Pakwood and Woods are inapposite in light of the facts before this Court. In both cases, the court considered the reasonableness of a landlord conditioning consent to a proposed assignment on the parties' agreement to guaranty the assignee's obligations under the lease. In Pakwood, the court found the landlord's refusal to consent to an assignment without a guaranty reasonable given the assignee's lack of experience in running the particular business, the assignees uncertain financial stability, and the current tenant's financial difficulties operating the same business the assignee now sought to purchase. Pakwood,219 Ga. App. at 529, 466 S.E.2d at 228. Similarly inWoods, the court held that the landlord's refusal to consent to an assignment unless the guarantors continued their guaranty of the lease was reasonable in light of the proposed assignee's uncertain financial condition and lack of experience.Woods, 781 S.W.2d at 592.
Here, however, despite Davis' contentions otherwise, the Chois' Lease obligations remained personally guaranteed by Davis under the Guaranty. See Adams, Harkness Hill,Inc. v. Northeast Realty Corp.,361 Mass. 552, 557, 281 N.E.2d 262, 265 (1972) (holding that the landlord was arbitrary and unreasonable in withholding consent to a proposed sublease where lessee had offered to guarantee the payment of the rent for the remainder of the lease); Ringwood,153 N.J. Super. at 301-02, 379 A.2d at 511 (citing Johnson v.Jaquith, 189 So.2d 827 (Fla. App. 1966)) *Page 20 
(stating that whether the assignor is willing to guarantee assignee's performance of the lease covenants, including the payment of rent, is a substantial factor to be considered in determining the reasonableness of the lessor's refusal to consent). Moreover, unlike the assignees in Pakwood and Woods, the Chois have experience in the restaurant industry; their Financial Statement indicated a positive net worth and that they earned about $100,000 in additional income per year; and as stated by Davis in an email to Dufficy, the Chois intended to purchase "Rhode Island's highest grossing Quiznos" that is "consistently among the top 15 stores in all of New England." See Def.'s Ex. D.
Therefore, the Court finds that the Landlord unreasonably withheld consent to the assignment. Although, the Chois' finances were not as strong as Davis', the Chois sought to continue using the Premises for the same use and in the same manner as the current tenant, the Quiznos Sub franchise had proven to be one of the most profitable in New England, the Landlord did not have to expend additional sums of monies to conform the space for the Chois' use, and Davis remained a personal guarantor of the Chois' obligations under the Lease.
 C Breach of the Lease
Following Defendant's refusal to consent to an assignment of the Lease to the Chois, on August 3, 2007, Davis and the Chois amended the Asset Agreement. (Pl.'s Ex. 8.) As part of the Amendment, the Chois purchased all the shares of Davco, and the Chois became the owners and sole shareholders of Davco. As a result, the Landlord asserts that Davco is in default of the Lease for having failed to obtain consent prior to this transaction. (Counterclaim ¶ 5.)
The "Assignment and Subletting" provision of the Lease states that the "Tenant shall not either voluntarily, or by operation of law, assign, transfer, mortgage, pledge, hypothecate or *Page 21 
encumber this Lease or any interest therein . . . without first obtaining the written consent of Landlord, which consent shall not be unreasonably withheld." (Pl.'s Ex. 2 ¶ 12.) While the Court agrees that this provision required Davco to obtain the Landlord's consent in the event of an assignment, sublease, or transfer, the Court finds that no such transaction has occurred.
Despite the change in ownership of Davco, the transaction had no effect on the parties to the Lease. Presently, the Lease remains between JT Building and Davco. By proceeding with a stock sale, the "Assignment and Subletting" provision of the Lease was not implicated, and the Court fails to recognize any other provision within the Lease requiring the parties to seek the Landlord's consent under these circumstances. Accordingly, because the parties to the original Lease remain the same, the Court finds that the "Assignment and Subletting" provision of the Lease was neither implicated nor breached by Davco, Davis, or the Chois; and the Court denies Defendant's request for relief.[12]
 D Attorney's Fees
It is well settled in Rhode Island that under the "American Rule," litigants are generally required to pay their own attorney's fees, absent statutory authority or contractual liability. Moore v.Ballard, 914 A.2d 487, 489 (R.I. 2007) (citing Eleazer v. TedReed Thermal, Inc., 576 A.2d 1217, 1221 (R.I. 1990)). This rule, however, is not without exception. See BlueCross Blue Shield of R.I. v. Najarian,911 A.2d 706, 711 n. 5 (R.I. 2006) (citing Chambers v. NASCO,Inc., 501 U.S. 32, 45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)) (stating three specific circumstances courts have granted an exception: (1) pursuant to the "common fund exception," a court may award attorney's fees to the party whose litigation efforts directly benefited others; (2) *Page 22 
a court may also assess attorney's fees as a sanction for willful disobedience of a court order; and (3) a court may award attorney's fees when a party has acted in bad faith or for oppressive reasons);see also Vincent v. Musone,574 A.2d 1234, 1235 (1990) (affirming the Court's inherent power to fashion appropriate remedies that "serve the ends of justice"). These exceptions are in applicable to the instant matter.
Furthermore, in light of the Court's determinations, JT Building has no contractual claim to attorney's fees under the terms of the Lease, and neither party is entitled to attorney's fees under § 9-1-45. Section 9-1-45 provides that in a civil action arising from a breach of contract claim, a "court may award a reasonable attorney's fee to the prevailing party" where it "finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party" or where it "renders a default judgment against the losing party." Sec. 9-1-45. Here, the Court was asked to consider whether under the circumstances, the Landlord reasonably withheld consent to an assignment and whether the terms of the Lease had been breached. Although the Court finds that the Landlord unreasonably withheld consent, in light of the issues of law and fact presented by the Landlord, the Court concludes that there was not "a complete absence of a justiciable issue." See UXB Sand Gravel, Inc. v. Rosenfeld ConcreteCorp., 641 A.2d 75, 80 (R.I. 1994) (reversing an award of fees under § 9-1-45, because the question of whether the statute of frauds was satisfied presented a justiciable issue); Kells v.Town of Lincoln, 874 A.2d 204, 216 (R.I. 2005) (finding that a justiciable issue existed and that even if there were a complete absence of a justiciable issue, the court has discretion as to whether or not to award attorney's fees). Accordingly, each party must bear its own attorney's fees, costs, and expenses. *Page 23 
 VI Conclusion
After due consideration of all the evidence, together with the arguments advanced by counsel at trial and in their memoranda, the Court finds that the Guaranty executed by Davis in conjunction with the Lease is not only currently enforceable despite the stock sale, but also would have remained enforceable had the Landlord consented to the parties' proposed assignment. In light of the fact that Davis would have remained personally liable for the Chois' Lease obligations, the Court finds that the Landlord unreasonably withheld consent to the proposed assignment. While the Chois' financial condition was not as strong as Davis', Davis' Guaranty provided the Landlord with adequate security in the event of a default. The Court finds that under the "Assignment and Subletting" provision of the Lease, there was no requirement to obtain the Landlord's consent to the stock sale — particularly where all the parties to the original Lease remained the same — and as a result, this Court denies Defendant's counterclaim for breach of the Lease. Furthermore, the Court finds that each party must bear its own attorney's fees, costs, and expenses.
Prevailing counsel may present an order consistent herewith which shall be settled after due notice to counsel of record. Counsel shall also arrange for a time to meet with the Court for the purpose of scheduling such further proceedings, if any, as may be appropriate under the circumstances.
[1] The Court notes that Davco is not a named party in this proceeding.
[2] Davis' personal financial statement was the only financial record Dufficy reviewed before entering into an agreement with Davis.
[3] Under the Asset Agreement, the completion of the asset sale was also contingent on the Chois obtaining purchase money financing in the amount of $164,000 from a commercial bank licensed and doing business in Rhode Island. Id.
[4] The Court notes that the Landlord's consent to the assignment was required because ChoiS Management, Inc. is not a parent, subsidiary, or an affiliate of Quizno's Franchising LLC.See Pl.'s Ex. 2 ¶ 12.
[5] Although not reflected in the Financing Statement, the Chois' residence would be subject to a second mortgage or equity line of credit drawn upon up to $70,000, and a third mortgage in the form of an SBA Loan from Stearns Bank in the amount of approximately $161,000. (Def.'s Exs. G L.) In addition to a third mortgage on their home, as part of the SBA Loan, the Chois pledged as collateral the "accounts receivables, inventory, equipment, and general intangibles" of the Quiznos Sub franchise they were to acquire. (Def.'s Ex. G.) The Chois also used a portion of their savings and an assignment of life insurance as security for the purchase of the Quiznos Sub store.
[6] The Landlord received the Chois' credit reports, 2003-2006 tax returns, and the April 13, 2007 Stearns Bank Commitment. (Pl.'s Ex. 11; Def.'s Exs. G, H, I.)
[7] McLaughlin also indicated that the Landlord found Davis' proposal to allow existing security deposits to remain in escrow for two years — in lieu of his continuing liability under the Guaranty — inadequate and failed to provide the Landlord with any meaningful financial security.
[8] The Court notes that under paragraph 12(a) of the Lease, Landlord's consent to an assignment, "in no way reliev[ed Davco] of any liability under th[e] Lease." Id. ¶ 12(a).
[9] Paragraph 12 of the Lease provides various procedures by which the Tenant may assign the Lease or sublet the Premises. (Pl.'s Ex. 2 ¶ 12.) Generally, a "Tenant shall not either voluntarily, or by operation of law, assign, transfer, mortgage, pledge, hypothecate or encumber this Lease or any interest therein. . . . without first obtaining the written consent of Landlord, which consent shall not be unreasonable withheld."Id. ¶ 12(a). While the Lease provides for an assignment or sublet to Quizno's Franchising LLC without the Landlord's consent, assignment to a duly authorized franchisee — such as ChoiS Management, Inc. — required "the Landlord's reasonable consent . . . based upon, without limitation, the Landlord's reasonable satisfaction with the financial statements and personal guaranty of such proposed franchisee." Id. ¶ 12(b).
[10] See supra note 4.
[11] Where, as here, the Chois sought the assignment of the Lease in order to continue the existing use of the Premises, the Court need not focus on the suitability of the Chois' use for the Premises, the legality of their proposed use, the need for alteration of the Premises, or the nature of the existing and proposed use. Furthermore, it is undisputed that Davis provided Dufficy with all the financial records he requested in connection with his review of the Chois' financial stability. Between May and June 2007, Davis provided Dufficy with the Chois' Financial Statement, credit reports, 2003-2006 tax returns, and the April 13, 2007 Stearns Bank Commitment.
[12] See supra note 1. In light of the fact that Davco is not a named party in this proceeding, the Court's findings contained herein are not binding upon Davco.